892 So.2d 694 (2005)
STATE of Louisiana, Appellee,
v.
Brandy Lane SIMPSON, Appellant.
No. 39,268-KA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
*695 Paula Corley Marx, Peggy J. Sullivan, Louisiana Appellate Project, for Appellant.
J. Schuyler Marvin, District Attorney, Dale Montgomery, John M. Lawrence, Assistant District Attorneys, for Appellee.
Before GASKINS, DREW and MOORE, JJ.
GASKINS, J.
The defendant, Brandy Lane Simpson, was convicted after a bench trial of forcible rape and violation of a restraining order. He appeals his conviction and sentence on the forcible rape conviction. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
The defendant and the victim, C.S.,[1] were married in 1996. At the time of the *696 present offenses, their son was five years old. According to the victim, the defendant was abusive during the marriage. In August 2002, he moved out of the family home. During the course of the proceedings, the victim obtained a restraining order against the defendant, preventing him from stalking, harassing or being within 100 feet of her. An exception to the restraining order was made regarding matters relating to the child. The victim filed for divorce in November 2002. The parties were divorced in June or July 2003.
In the early morning hours of January 17, 2003, the victim stated that the defendant gained entry to her home, forcibly raped her, and threatened to kill her. She claimed that he hid her telephone to prevent her from calling for help. After he left, she reported the offense to the police.
The defendant was arrested and charged with one count of forcible rape and one count of violating the restraining order against him. He waived his right to a trial by jury and chose to be tried in a bench trial. The defendant was convicted as charged on both counts. On the conviction for forcible rape, the trial court sentenced the defendant to serve 12 years at hard labor, two of which are to be served without benefit of parole, probation, or suspension of sentence. On the conviction for violation of the restraining order, the defendant was sentenced to serve six months in the parish jail, concurrent with the sentence for forcible rape. The sentences on these two offenses were ordered to be served consecutively with any other sentence imposed on the defendant.
The defendant appealed, claiming that there was insufficient evidence upon which to base his conviction for forcible rape and that the sentence imposed for that offense is excessive.[2]

SUFFICIENCY OF THE EVIDENCE
Although the record does not reflect that the defendant filed a motion for postverdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273; State v. Hannon, 37,351 (La.App.2d Cir.8/20/03), 852 So.2d 1141.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424.
This court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's *697 decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490; State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207.
La. R.S. 14:42.1, in relevant part, states:
A. Forcible rape is rape committed when the ... vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
The testimony of a sexual assault victim alone is sufficient to convict a defendant. State v. Ponsell, supra; State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989); State v. Robinson, supra. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Ponsell, supra.
After his arrest, the defendant was advised of his Miranda rights. He waived those rights and gave a recorded statement to police. He stated that the victim picked up their son around 8:00 p.m. on January 16, 2003. The defendant then went out with a friend. They ate and went to a nightclub. The defendant drank eight to ten beers over the course of the evening. He stated that he called the victim and talked with her about coming by later that night. He claimed she told him that it was late and not to come by. He went to her house anyway. The defendant's friend dropped him off at the victim's house. The defendant said that he knocked on the door and the victim let him in. He denied having a key to the house.
He stated that she asked him more than once to leave, but he did not. After being asked by the detective, the defendant admitted having sex with the victim, but claimed it was consensual. The defendant said that she was angry after they had sex and told him to leave. He admitted that he knew there was a restraining order limiting his contact with the victim. He claimed that the victim frequently allowed him to violate the order.
At trial, the victim outlined her turbulent relationship with the defendant. She stated that at one point during the marriage, the defendant choked her until she lost consciousness. She said that the day they separated, the defendant physically abused her. The victim testified that when they separated, she had gone to her cousin's house and was standing in the driveway. The defendant drove up and demanded that she come home. He grabbed her and threw her against the truck, tearing her shirt. Her cousin witnessed the altercation and the police were called. The police went to the victim's house and found a butcher knife in the hallway. The victim had not put the knife there. The implication was that the defendant may have intended to attack the victim when she came home.
The victim admitted having consensual sexual intercourse with the defendant several weeks after the separation which occurred in August 2002. The victim obtained *698 a restraining order on August 21, 2002. The record shows that the child custody decree, entered December 19, 2002, enjoined the defendant from having any contact with the victim, except as relating to the child.
The victim's testimony at trial was consistent with her taped statement to police. She claimed that on the date of this offense, she awoke around 1:00 a.m. The defendant had gotten into the house and was crouching by her bed, groping her. The victim said in her taped statement that the defendant told her he got into the house through a window. At trial, the victim speculated that he might have had a key because he had previously taken things from the house while she was not at home. She stated the defendant was intoxicated and hostile. Because her son was sleeping in the bed with her, she persuaded the defendant to go to the living room.
The defendant said that he was there for sex and she could make it easy or hard. She told him it was going to be the hard way because she did not want him to touch her. At that point, the defendant became more violent. He threw the victim down on the living room floor and pulled off her pants and shirt.
The victim stated that she resisted as much as she could without waking her son. She testified that she repeatedly said, "No" and "Please stop." She added, "I knew he was going to hurt me and I didn't want him to hurt me." According to the victim, the defendant said, "Don't you think I'm capable of killing you? I'll kill you. Don't you know I could kill you? Don't you think I'm capable of it?" The victim claimed that he finally stopped when she begged, but after penetration occurred.
After she got away from the defendant, the victim said she tried to find the phone to call for help. The defendant threw her to the floor and threatened her again. The victim said that the defendant stayed in the house about 30 minutes after the rape. When the defendant left, the victim found the phone on the top of the refrigerator and called her cousin who lives nearby. She also called the police. The victim asserted that she had not placed the phone on the refrigerator. She went to the hospital where a rape kit examination was conducted. The victim's arm was bruised and the police photographed the injury.
At trial, the defendant testified in his own behalf. He stated that he had previous convictions for DWI, possession of steroids, and possession of stolen things.[3] The defendant said that earlier in the evening, prior to this offense, when the victim came to pick up the child, he told her he wanted to come over. He then went out to eat with a friend and drank several beers. His friend dropped him off at the victim's house. According to the defendant, the victim answered the door and then went back to bed. He stated that she is a heavy sleeper. He claimed that he woke the victim and they went into the living room to talk. On cross-examination, he admitted groping and fondling the victim while she was in bed. According to the defendant, they ended up having consensual sexual intercourse. He denied the use of force or threatening to kill her.
The defendant claimed that, after having sex, they talked more about their relationship. The defendant stated that he refused to give the victim everything she wanted in the property settlement and child custody arrangement so the discussion *699 became heated. The defendant denied hiding the victim's telephone.
The defendant denied ever hitting the victim, but admitted they had an altercation prior to this offense in which he grabbed her shirt to prevent her from walking away. He pled guilty to simple battery in connection with that incident.
Officer Kevin Little of the Bossier City Police Department testified that he was dispatched to investigate this incident. He found the defendant walking along Airline Drive and arrested him. Officer Little also took a statement from the victim that was consistent with her taped interview given later that morning. Officer Little noted that even though the victim said the defendant told her he got into the house through a window, he did not find any signs of forced entry. Officer Little stated that there was no way of knowing how the defendant got into the house.
Officer Shane McWilliams of the Bossier City Police Department was the violent crimes investigator for this incident. Officer McWilliams took taped statements from both the defendant and the victim. He reiterated their statements and noted that the defendant thought intercourse was consensual because the victim was his wife. Officer McWilliams noted that, even though the defendant was under arrest for rape, he never mentioned having sex with the victim until he was asked directly.
Officer McWilliams photographed the bruising on the victim's arm and stated that it was worse than it appeared in the picture. He said the injury indicated the use of force.
Officer McWilliams listened to a message from the victim's answering machine left by the defendant asking to come to the victim's house so they could talk on the evening of this offense. The message was recorded digitally, so no tape could be taken for evidence at trial. Officer McWilliams stated that the victim was very upset and he deemed her to be credible.
Cara Collier, the victim's cousin, testified that she witnessed the defendant commit several acts of violence toward the victim. Another witness, Gary Carrington, testified that he once saw the defendant kick the couple's son.
In finding the defendant guilty as charged, the trial court found that the victim was credible and that her version had been consistent throughout. The court found inconsistencies in the defendant's testimony and in what he told Officer McWilliams. The court found that the state proved all the elements of the offenses charged.
The defendant argues on appeal that the victim was inconsistent in her versions of how he got into the house. At first she said that he got in through a window. She later said that he must have had a key. No sign of forced entry was found and the defendant did not have any keys when he was arrested.
The defendant points out that the only corroborative physical evidence in this case is a small bruise. Even though the victim claimed that her clothes were forcibly removed, there was no showing that they were damaged. The defendant claims that the evidence fails to show that the victim was prevented from resisting by force or by threats of violence. He contends that she was allowed to check on the child and that she did not try to lock herself in the room which she would have done if she were truly threatened.
As stated by Officer Little, there is no way to know how the defendant got into the house. The defendant admitted previously taking things from the house when the victim was not at home. The victim *700 consistently testified that she did not allow the defendant to enter the house.
The evidence shows that the victim was physically injured and that the defendant had intercourse with her through the use of force and threats of violence. The testimony shows that the defendant had also abused their child. It was not unreasonable for the victim to try to keep the defendant away from the child rather than seeking refuge in the child's room.
These arguments do not show the victim's testimony to be inconsistent or in irreconcilable conflict with the physical evidence. On the other hand, the defendant's statements to police and at trial contain numerous inconsistencies. In his taped police interview, the defendant initially failed to mention having sex with the victim even though he had been arrested for rape. He told the police that the victim acted "mad" after they had sex. At trial, he contended that the sexual activity was completely consensual.
The defendant told police that he talked to the victim on the telephone about coming to her house. At trial, the defendant said he talked to the victim about coming over when she picked up their son earlier in the evening. The evidence shows that he left a message on her answering machine that was not retrieved until after this offense.
In his police interview, the defendant did not say that the victim answered the door and then went back to bed as he testified at trial. During the interview, he stated that she asked him to leave several times. At trial, he said she asked him to leave, "after a certain amount of time." The defendant's testimony was also inconsistent regarding his prior violent behavior toward the victim and was inaccurate regarding his criminal record.
The victim's statement to police immediately after this offense and at trial were consistent. Her testimony does not contain any internal contradictions or irreconcilable conflict with the physical evidence. Although this conviction is based upon the testimony of the victim, the trial court did not err in finding her to be credible. All essential elements of the crime of forcible rape were proven beyond a reasonable doubt.

EXCESSIVE SENTENCE
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ *701 denied, 97-0705 (La.9/26/97), 701 So.2d 979; State v. Brown, 35,641 (La.App.2d Cir.8/20/03), 852 So.2d 1234.
The second prong of the test of whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1 § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Bradford, supra; State v. Brown, supra.
A trial court has broad discretion to sentence within statutory limits. Absent a showing of manifest abuse of discretion by the trial court, a reviewing court may not set aside a sentence. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Brown, supra.
The defendant argues on appeal that his sentence for forcible rape of 12 years at hard labor, with two years to be served without benefit of parole, probation, or suspension of sentence, is excessive. The defendant contends that the sentence imposed did not reflect the charge or the defendant's personal history. He acknowledges his two prior felony convictions and his misdemeanor record. He claims to have finished high school, attended college for awhile, and now owns his own business. The defendant argued that his sentence would preclude him from continuing his relationship with his son and working to support him. He maintains that, even taking the victim's version as true, this is far from the worst of offenses. He also points out that the sum total of the physical injuries suffered by the victim was a slight bruise on her arm. These arguments are without merit.
In this case, the record shows that the trial court considered the factors enumerated in La. C. Cr. P. art. 894.1. Prior to imposing sentence, the court reviewed a presentence investigation report, letters submitted on behalf of the defendant, and spoke with the victim. The court noted that the defendant was 32 years old at the time of the offense and, following the present conviction, was a third felony offender. He had a 1991 conviction for attempted distribution of anabolic steroids, and at the time of the present offense, was on probation for a 2001 conviction for felony theft. At the time of sentencing, the defendant's probation had been revoked. He also had three prior DWI convictions and a simple battery conviction in 2003, arising from a prior altercation with the victim, as discussed above.
The court noted that the defendant had been married to the victim and their child was six years old at the time of sentencing.
The court found that the defendant was in need of correctional treatment best provided by incarceration. As a third felony offender, the defendant was not entitled to probation. The court stated that a lesser sentence would deprecate the seriousness of the offense. The court noted that the defendant used threats or actual physical violence in the commission of the offense. The court ordered that the defendant's sentence for forcible rape be served concurrently with the sentence imposed for violation of the restraining order, but consecutively to any other sentence imposed.
On this record, we find no constitutional error. The penalty for forcible rape is specified in La. R.S. 14:42.1:

*702 Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
The sentence imposed was less than one-third of the maximum and only the minimum amount of time required was ordered to be served without benefits. Furthermore, the defendant was not charged as a multiple offender. The sentence is not grossly out of proportion to the seriousness of the offense nor is it shocking to our sense of justice.
The defendant has exhibited a pattern of violent behavior toward the victim, culminating in the present offense. Given these factors, and the defendant's significant criminal history, the trial court did not abuse its discretion in the imposition of the sentence.

CONCLUSION
For the reasons stated above, the conviction and sentence of the defendant, Brandy Lane Simpson, are affirmed.
AFFIRMED.
NOTES
[1] The victim is identified by initials due to the confidentiality requirements applicable to this case under La. R.S. 46:1844(W).
[2] La. C. Cr. P. art. 914 provides that a motion for appeal must be made no later than 30 days after the rendition of the judgment or ruling from which the appeal is taken. The scope of appellate review is any error designated in the assignment of errors or discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La. C. Cr. P. art. 920. The defendant has not appealed his conviction or sentence for violation of the restraining order. Therefore, the conviction and sentence for that offense are not before us for review and are final.
[3] The record shows that the defendant was actually convicted of several DWIs, simple battery, attempted distribution of anabolic steroids, and felony theft.