WILLIAMS, J.
|tA DeSoto Parish grand jury returned an indictment charging the defendant, Calvin Authier, with aggravated rape, a violation of LSA-R.S. 14:42. Following a jury trial, the defendant was convicted of molestation of a juvenile, a responsive verdict to the charged offense. He was adjudicated a fourth felony habitual offender and was sentenced to serve life in prison at hard labor without benefit of probation, parole or suspension of sentence. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
The victim in this case is A.W.,[1] who was 11 years old at the time of the offense. *496 A.W. and her younger sister, M.W., lived with their parents in Shreveport, Louisiana. One of A.W.’s friends was K.H., who had a 12- or 13-year-old brother, J.H.[2] A.W.’s mother (“Ms. W.”) testified that she met K.H. and her mother (“Ms. H.”) approximately three weeks prior to the offense, when the children of both families socialized at the pool at Harrah’s Louisiana Downs. Thereafter, A.W. and J.H. began sending each other text messages. According to Ms. H., some of the content of the text messages was sexual in nature. For example, in one of the messages, A.W. told J.H., “I’m wet for you.”
On Friday, January 15, 2010, Ms. H. and her children went to Ms. W.’s home to invite A.W. and M.W. to a slumber party at Ms. H.’s house in |2PeSoto Parish. According to Ms. W., J.H. hid in the car under a blanket while she and his mother talked. Ms. W. testified that Ms. H. told her that the child hiding under the blanket was her nine-year-old son, and that “he didn’t like girls.” Ms. W. stated that Ms. H. assured her that there would be no men or boys at the slumber party. She explained that if she had known there would be males at Ms. H’s house, she would not have allowed her daughters to attend the party.
Approximately 11 people were at Ms. H.’s house on the night of the slumber party, including other girls who were not related to either family. Ms. H.’s four children were present, including J.H. and Ms. H.’s 19-year-old daughter, S.B. The defendant was S.B.’s 28-year-old boyfriend, who was also staying at the house that weekend.[3]
Ms. W. testified that A.W. called her Saturday afternoon and reported that she and her sister were having a good time and that everything “was okay.” The incident that led to the defendant’s arrest and subsequent prosecution occurred during the early morning hours of Sunday, January 17, 2010.
At trial, A.W. affirmed that her version of the events of that Sunday morning given at an interview at the Gingerbread House was truthful. That interview was videotaped, and the tape was played for the jury. During the interview, A.W. made the following statements:
—at around midnight that Saturday night/Sunday morning, she went to the living room to sleep on one of 1.-¡the sofas;
—the defendant entered the living room, sat on the sofa next to her and told her that he was going to rape her;
—the defendant told her that he would kill her if she said anything;
—the defendant called J.H. into the room and ordered J.H. to have sexual intercourse with her; the defendant stated that he would kill J.H. if he did not do so;
—when J.H. refused, the defendant punched J.H. in the face and told him to “get on top of’ her;,
—J.H. moved her shorts to the side and the defendant told J.H. to “put his private part in mine;”
*497 —J.H. “got on top of’ her and pretended to have intercourse; J.H. told her to act like she was hurting;
—the defendant put his hands on J.H.’s hips and pushed his hips forward, making sure that J.H. was having intercourse with her;
—during this time, J.H. told her that he was using “protection;”
—she knew that J.H. had condoms in a drawer in his bedroom because he had shown them to her the day before the incident;
—after she and J.H. engaged in intercourse for about 15 minutes, the defendant told J.H. to go take a shower;
—when J.H. left the room, the defendant sat there “playing with his private part” and then told her that it was his turn;
—the defendant called to J.H. and said that “he had been blessed;”
—the defendant moved her shorts to the side and “stuck his private part in mine;”
—when she tried to resist, the defendant burned her shoulder with a lighter;
14 — the defendant had both vaginal and anal intercourse with her;
—when the defendant stopped, she kicked him in the face, to which the defendant stated, “I feel no pain;”
—the defendant then forced her to “suck his private part;”
—the defendant slapped her face, scratched her arm and told her to go take a shower;
—while she was in the shower, either the defendant or J.H. removed the shorts she had been wearing from the bathroom.
J.H. testified about his recollection of that night/early morning.[4] His testimony was as follows:
—he, A.W. and the defendant were in the living room while the rest of his family and their guests were in other rooms of the house;
—A.W. told him to go into the shower “[be]cause she wanted to go in with me;”
—A.W. and the defendant were on the sofa together when he left to get into the shower;
—A.W. never joined him in the shower;
—initially, J.H. testified when he returned from taking a shower, he saw A.W., but she said nothing to him. However, when reminded of a statement he had given earlier to police, J.H. testified that when he came out of the shower, A.W. was crying and she “said something about” the defendant hurting her;
—when he returned from the shower, he and A.W. began to have sexual intercourse while the defendant watched them and played a video game on the television;
|fi — at one point, the defendant instructed him to “put her legs up or something like that;”
—he and A.W. had sex “all night”, including anal sex;[5]
—A.W. consented to the act; he wore a condom.
*498 J.H. also testified that he did not know what happened in the living room between the defendant and A.W. while he was in the shower. However, he contradicted A.W.’s statement that the defendant put his hands on his (J.H.’s) hips and forced him to have intercourse with A.W. J.H. testified that the defendant did not participate while he (J.H.) and A.W. were having sex and did not punch him in the face. He also testified that A.W. had sent him text messages in the past indicating “that she was sexually active.” J.H. also testified with regard to a letter that he wrote to the trial judge prior to the trial. He stated that he wrote the letter with the help of— and at the request of — his sister, S.B. (the defendant’s girlfriend). In the letter, J.H. stated that he and A.W. had “consensual” sex and that A.W. was “lying” about the defendant raping her.[6]
S.B. testified about the layout of the family’s home. She testified that she was awake at the time of the incident and was seated in an area near the living room. At that time, the defendant was in the living room playing a video game. She stated that she “would go over there from time to time” because she wanted the defendant to finish playing the game. S.B. testified that A.W. and J.H. were “laying [sic] on the couch. I couldn’t really see | ¿cause their heads were all the way down.” She denied seeing A.W. and J.H. have sexual intercourse because “I wasn’t paying attention to [them].” However, she testified that she would have known if the defendant had raped A.W. because “I was paying attention to Calvin.” S.B. testified that the defendant finished playing the video game, came and watched television with her, and told her that J.H. and A.W. had been having sexual intercourse. She admitted that she really did not “know what happened back in the room.” However, she stated, “If I knew he raped a little girl, I wouldn’t lie for him or anyone.”
The defendant testified on his own behalf. He admitted that he was present in the house on that Saturday night/Sunday morning. He testified that he walked into the living room to play a video game on the television, and he saw J.H. and A.W. having sexual intercourse. The defendant stated that he did not say anything to the children or attempt to stop them because “they really wasn’t [sic] my responsibility” and “it wasn’t none [sic] of my business.” He testified that he proceeded to play the video game. He also stated that while he was present, J.H. left to take a shower while A.W. remained on the sofa. The defendant denied raping A.W.; he also denied forcing J.H. to have sexual intercourse with her. He testified that when he finished playing the video game, he went back to a bedroom with S.B., watched television for approximately half an hour, and went to sleep. The defendant also testified that A.W. lied about him raping her, and J.H. lied when J.H. testified that he (the defendant) instructed him (J.H.) to raise AW.’s leg.
17When A.W. and M.W. returned home that Sunday, their mother noticed that A.W. was behaving strangely and did not want to talk about the slumber party. When questioned by her mother, A.W. stated that “everything would have been fine ... Oreo started this.” “Oreo” was the defendant’s nickname. Upon further questioning, A.W. told her mother that the defendant had raped her.
Ms. W. contacted the Shreveport Police Department; on Monday, January 18, 2010, she spoke with DeSoto Parish Sheriffs Office Detective Garland Hensley. Detective Hensley took their statements *499 and arranged for A.W. to be examined by-Ms. Fonda Partner, a sexual assault nurse examiner (“SANE”). That examination, which took place on January 19, 2010, included the application of a dye to the victim’s external vaginal and anal regions. During the examination, Ms. Partner observed dye uptake around those areas, which was consistent with recent trauma. Ms. Partner did not perform an internal examination or swabbing; she explained that “on kids, we don’t do that because [A.W.] reported that she wasn’t sexually active and that was the first time.” The nurse performed an external swab test for DNA; the examination did not yield any DNA samples. Ms. Partner testified that a shower would “more than likely” wipe away the DNA or other elements which would have been present if the person had not showered.
Ms. Partner also testified that A.W. told her that the defendant was the person who had raped her, that the defendant had told her that he would kill her if she screamed, and that he put his penis into her vagina, anus and |smouth. The nurse also stated that A.W. told her that the defendant had also forced J.H. to have sex and that J.H. had used a condom. The nurse observed a burn on A.W.’s right shoulder and scratches on her right arm; A.W. told the nurse that the defendant burned her with a lighter. The nurse took photographs of those injuries; the photographs were introduced into evidence at trial.
During their investigation into A.W.’s allegations, DeSoto Parish detectives interviewed Ms. H. and J.H. During the interview, Ms. H. told the detectives that neither J.H. nor any other male was present in the home during the slumber party. She also reported that she was in the house the entire weekend. However, J.H. contradicted his mother’s statements by admitting to being in the house.[7] During the trial, Ms. H. admitted that she had lied to the officers; J.H. was at the house that weekend. Ms. H. testified that she was smoking marijuana and was “in and out of the house” that weekend. She admitted that she provided very little supervision of the children; she knew nothing about the events that led up to the defendant’s arrest. Ms. H. testified that she saw a burn mark on AW.’s shoulder. She stated that she asked J.H. about the mark, and he told her that “him and [A.W.] had burned each other as a token of their love for each other.”
By a vote of 11-1,[8] the jury convicted the defendant of molestation of a juvenile, a responsive verdict to the charged offense of aggravated rape. The trial court denied the defendant’s motions for post-verdict judgment of |nacquittal and new trial. Thereafter, the state filed a habitual offender bill of information, charging the defendant as a fourth felony offender; and after a hearing, the court adjudicated the defendant a fourth felony offender. Accordingly, the court sentenced the defendant to the mandatory term of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. The defendant filed a motion to reconsider sentence which was, in content, akin to a motion for hew trial. The trial court denied that motion.
The defendant now appeals.
DISCUSSION

Sufficiency of the Evidence

The defendant contends the evidence was insufficient to support his con *500 viction for molestation of a juvenile. He argues that (1) A.W. was the only witness who testified that he had sexual contact with her; (2) J.H. testified that he did not see the defendant have any sexual contact with A.W. on the night in question; and (3) several other witnesses present in the home at the time of the incident testified that they did not see or hear anything unusual. Further, the defendant argues that the jury’s return of a responsive verdict shows that the jury did not believe A.W.’s testimony. Essentially, the defendant argues that A.W.’s testimony was untrue; A.W. had consensual sexual intercourse with J.H. and lied about the rape as a means to avoid “getting into trouble” with her parents.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to |inthe prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. The rule applies equally to the testimony of victims of sexual assault. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490. See also State v. Simpson, 39,268 (La.App.2d Cir.1/26/05), 892 So.2d 694. Such testimony alone is sufficient, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra; see also State v. Johnson, 96-0950 (La.App.4th Cir.8/20/97), 706 So.2d 468, writ denied, 1998-0617 (La.7/2/98), 724 So.2d *501 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
LSA-R.S. 14:81.2 provides, in part:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the | ^juvenile. Lack of knowledge of the juvenile’s age shall not be a defense.
* * ⅜
In the instant case, at the time of the offense, the defendant was 28 years-old; A.W. was 11 years old. A.W.’s testimony was replete with facts that were, if believed by the trier of fact, sufficient to prove the elements of this offense. A.W. testified that the defendant told her that he would kill her if she screamed and then proceeded to put his penis into her vagina, anus and mouth. She also stated that when she attempted to resist, the defendant burned her shoulder with a lighter, slapped her and scratched her arm. Clearly, the defendant’s conduct was intended to gratify his sexual desires. Under the plain meaning of sufficiency, A.W.’s testimony alone was sufficient to prove the offense of molestation of a juvenile beyond a reasonable doubt.
However, on appeal, the defendant has asked this Court to find the evidence legally insufficient, arguing that no rational trier of fact could have believed A.W.’s testimony.
In State v. Mussall, 523 So.2d 1305 (La.1988), the Louisiana Supreme Court explained:
After reviewing Jackson and the foregoing authorities, we conclude that a reviewing court may not disregard its duty under due process of law as interpreted by Jackson v. Virginia simply because the record contains testimony which tends to support each fact necessary to constitute the crime. If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionally. The actual trier of fact’s rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon [^judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution, and by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Thus, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.
Id. at 1311 (Footnotes omitted).
Herein, the jury was presented with different versions of the events of the night in question. After considering the evidence, the jury made a rational decision to convict the defendant of molestation of a juvenile. Although the witnesses gave varied explanations of the events that occurred on January 17, 2010, the jury was made fully aware of the motives each witness might have had to fabricate their testimony. The victim’s testimony did not include statements that were inconsistent with the physical evidence, nor did it con *502 tain any significant internal inconsistencies. A.W.’s account of the events was essentially unwavering, from her initial report to her mother, to her statement to the detectives, to her statement to the SANE nurse, to her statement to the interviewer at the Gingerbread House, to her testimony at trial. We find that a rational trier of fact could have credited her account of the incident; thus, the evidence was sufficient to support the defendant’s conviction. This assignment lacks merit.
Motion for Mistrial — Jury Selection
The defendant also contends the trial court erred in denying his motion for mistrial. The defendant argues that a mistrial should have been granted when one of the jurors expressed a negative opinion about Ms. H., | Mwho was a witness at trial.
The state or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his or her partiality. LSA-C.Cr.P. art. 797(2). The issue concerning the motion for mistrial is governed by LSA-C.Cr.P. art. 775, which provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
Mistrial is a drastic remedy which should be declared only on a clear showing of prejudice by the defendant. State v. Leonard, 2005-1382 (La.6/16/06), 932 So.2d 660; State v. Kemp, 39,358 (La.App.2d Cir.3/11/05), 896 So.2d 349, writ denied, 2005-0937 (La.12/09/05), 916 So.2d 1052. The determination of whether actual prejudice has occurred lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Weary, 2003-3067 (La.4/24/06), 931 So.2d 297, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006); State v. Smith, 43,136 (La.App.2d Cir.4/23/08), 981 So.2d 200.
Disclosure during the trial that a juror knows or is related to a witness or the victim is not sufficient to disqualify a juror unless it is shown that the relationship is sufficient to preclude the juror from arriving at a fair verdict. State v. Magee, 2004-1887 (La.App.1st Cir.5/6/05), 916 So.2d 191, writ denied sub nom State ex rel. Magee v. State, 2006-0028 (La.6/16/06), 929 So.2d 1277; State v. Wilson, 2001-0625 (La.App.3d Cir.12/28/01), 806 So.2d 854, writ denied, 2002-0323 (La.9/13/02), 827 So.2d 1121; see also LSA-C.Cr.P. art. 797. The connection must be such that one must reasonably conclude that it would influence the juror in arriving at a verdict. A trial judge is granted great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed without a showing of an abuse of that discretion. State v. Magee, supra; State v. Wilson, supra.
In the instant case, during voir dire, the prosecutor asked prospective jurors if they knew any of the witnesses who would appear at the trial. The list of names recited by the prosecutor did not include Ms. H. and B.L., one of the guests at the slumber party. The jury was then selected and sworn. When the witnesses were placed under the rule of sequestration, all of their names were recited. At that point, one of the jurors, Ms. Courtney Phelps, realized that she knew Ms. H. and B.L. and informed the court of that fact. The trial judge held a hearing outside the presence of the rest of the jury during which Ms. Phelps stated:
I’ve known [B.L.] since she was a baby. My mother used to babysit her and I’ve *503 been friends with her mother ... since she was a little girl[.]
[[Image here]]
I met [Ms. H.] through [B.LJs mother. I mean, I never really had any dealings with her because there was a vibe about her that I really wasn’t fond of so, I mean, I just really never hung out with her or anything.
In response to the trial court’s questions about any possible bias against Ms. H. and whether her (Ms. Phelps’) feelings would affect her conduct, Ms. Phelps stated:
lifiNo sir. I mean, like I said yesterday, there’s two sides to every story. You know, I feel that, you know, what she says isn’t going to affect and what he says, you know, what anybody else says isn’t going to affect anything.
When asked if her knowledge of the witnesses would affect her ability to serve as a juror, Ms. Phelps stated, “No sir, it does not.”
The prosecutor then requested that Ms. Phelps be removed as a juror; the defendant later joined that request. The trial court denied the request, stating that it was “satisfied with [Ms. Phelp’s] answers that she can be fair and impartial and it does not affect her deliberations[.]” The defendant then moved for a mistrial, which the trial court denied. During the trial, Ms. H. testified; however, B.L. did not testify.
As stated above, the juror’s knowledge of Ms. H. and B.L. was not explored on voir dire because their names were not called when the names of the witnesses were recited. Thus, there was no contemporaneous accusation that Ms. Phelps made a false statement during voir dire. See, LSA-C.Cr.P. art. 775(6). Once the trial began and the names of the witnesses were fully revealed, Ms. Phelps disclosed that she knew two of the potential witnesses, that she had met Ms. H. and that she was not “fond of’ Ms. H.’s “vibe.” However, after being questioned by the trial court, Ms. Phelps explained that she could listen to both sides of the case and that her knowledge of the witnesses would not affect her ability to serve as a juror.
In State v. Magee, supra, the defendant appealed his conviction for aggravated rape, arguing that the trial court erred in failing to remove a juror after she advised the court that she lived next door to a pivotal witness for the prosecution and had “outside knowledge” of the charged offenses. The |17court of appeal found that the trial court did not abuse its discretion by refusing to remove the juror. The court stated:
[The juror] stated that she thought she could be fair and impartial in this case. She also explained that knowing [the witness] would not affect her opinion as to the defendant’s guilt or innocence[.]
* * *
The circumstances do not indicate that [the juror] could not be fair and impartial. The concerns of bias, prejudice, or less than unequivocal responses raised based upon the voir dire exchange are not so strong as to demonstrate an abuse of the trial court’s exercise of its broad discretion in this area.
Id. at 196 (internal citations omitted).
In the instant case, the defendant’s suggestion that Ms. Phelps’ statements to the trial court could be construed as false is without merit. Ms. Phelps timely informed the court of the potential issue and the court addressed it prior to the verdict. Further, and most importantly, Ms. Phelps affirmed that her knowledge of the witnesses would not affect her ability to serve as a juror and would not affect her opinion of the defendant’s guilt or innocence. The trial judge, who had the opportunity to see *504 Ms. Phelps and observe her demeanor as she answered the questions posed, accepted her responses as true. There is nothing in the record to undermine the court’s factual finding, which is entitled to great weight on appeal.
Confrontation Clause — Rape Shield Law
The defendant also contends the trial court’s application of the rape shield law violated his Sixth Amendment right to confront and cross-examine adverse witnesses. He argues that he was entitled to present evidence that A.W. and J.H. had engaged in consensual sexual intercourse 11sone week prior to the event that led to the defendant’s conviction.
The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution “to be confronted with the witnesses against him.” This right is secured for defendants in state as well as federal criminal proceedings. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); State v. Vaughn, 448 So.2d 1260 (La.1983). The confrontation clause of our state constitution directly affords each accused the right “to confront and cross-examine the witnesses against him[.]” La. Const. Art. 1, § 16.
Generally, a defendant may attack the credibility of a witness by examining him or her concerning any matter having a reasonable tendency to disprove the truthfulness of his or her testimony. LSA-C.E. art. 607(C). However, the right of an accused sex offender to present a defense must be balanced against the victim’s interests under LSA-C.E. art. 412, which is intended to protect a victim of a sexual assault from having his or her sexual history made public. State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680. The purpose of the rape shield law is to “protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior.” State v. Williams, 2005-1560 (La.4/24/06), 927 So.2d 266, 267, quoting Michigan v. Lucas, 500 U.S. 145, 146, 111 S.Ct. 1743, 1745, 114 L.Ed.2d 205 (1991).
LSA-C.E. art. 412 provides, in pertinent part:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion of the past sexual behavior of the victim is not admissible.
|19B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim’s past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
* * *
(Emphasis in original).
Thus, in a prosecution for sexually as-saultive behavior, Article 412 prohibits the introduction of evidence of the victim’s past sexual behavior, with certain limited exceptions. State v. Freeman, 2007-0470 (La.App.1st Cir.9/14/07), 970 So.2d 621, writ denied, 2007-2129 (La.3/14/08), 977 So.2d 930. Under certain circumstances, the restriction of a defendant’s offer to introduce testimony as to the victim’s prior sexual history may violate the defendant’s right to confrontation and fair trial. State *505 v. Vaughn, supra; see also LSA-C.E. art. 412, comment (b).
Art. 412(B)(1) provides that evidence may be admitted that the victim of a sexual assault has engaged in sexual conduct with a third party; however, the evidence is admissible only for the issue of whether or not the accused was the source of semen or injury to the victim. The article further limits such evidence to events occurring not more than 72 hours prior to the alleged assault. Despite the plain wording of the article, its limitations must yield in some cases. Comment (b) to the article provides:
The Louisiana Supreme Court, in State v. Vaughn, 448 l2nSo.2d 1260 (La.1984), has indicated that a restriction of a defendant’s offer to introduce testimony as to the victim’s prior sexual history may violate the defendant’s right to confrontation and fair trial. Federal Rule of Evidence 412 addresses this problem by explicitly providing for the admissibility of evidence (other than reputation or opinion) of a victim’s past sexual behavior when such evidence “is constitutionally required to be admitted.” This Article, like every Article in this Code is necessarily subject to constitutional requirements, and it has not been the general practice in this Code specifically to refer to them. See Art. 102, comment (b); comments to Art. 403.
In the instant case, on October 4, 2010, the defendant filed a motion to introduce evidence of A.W.’s past sexual behavior pursuant to LSA-C.E. art. 412. The defendant alleged, inter alia, that “A.W. and her mother” [stated that] the defendant forced [J.H.], a juvenile, to have sex with A.W. before the defendant committed aggravated rape on A.W.” The defendant argued that he was entitled to present evidence that A.W. and J.H. engaged in consensual sexual intercourse one week prior to January 17, 2010. A hearing on the issue was held on October 13, 2010, and the motion was denied. The trial court found that it was a premature effort to bolster the credibility of J.H. and that the alleged consensual intercourse did not occur within the 72-hour time limit prior to the offense, as required by LSA-C.E. art. 412(B)(1). The court stated, “Now, it’s very possible during cross-examination, that thin line you walk down, it could open the door wide open. But we’ll cross that when we get to it.”
Subsequently, following the testimony of J.H. and S.B., the issue was raised again, and another evidentiary hearing was held. The trial court stated:
| The issue has become as to whether there is evidence of other sexual relations of the alleged victim in this case were admissible for impeachment purposes. The State’s position was that 412 prohibits that introduction of that evidence and after reviewing the case law, that is the ruling of the Court that as the record exists right now based upon the evidence we have to this point is that no such evidence is admissible. The Court is very mindful that this is a delicate balance of protecting a victim of a sexual assault from opening up entire sexual history versus the defendant’s right of confrontation and in particular impeachment, but as I stated, the Court’s ruling is that such evidence is not admissible. That is evidence of sexual relationships with anyone other than this defendant.
In State v. Vaughn, supra, the victim, a 15-year-old girl, ran away from home and eventually shared an apartment with the defendant. The victim admitted that she and the defendant had consensual sexual intercourse on a prior occasion; however, the defendant raped her three days after the consensual contact. During the trial, *506 the defendant sought to present evidence that the victim had sexual intercourse with another man five days prior to the rape. On rehearing, the Supreme Court found that the evidence was inadmissible, stating:
[Ejvidence of a single instance of sexual intercourse between the victim and another individual 5 days prior to the rape is not relevant to a determination of whether the act with defendant was consensual. The fact that the victim consented to intercourse with another man is not probative of her subsequent conduct with defendant. Rather, were the evidence to be admitted, the victim would be confronted with the accusations of her own chastity, which cannot be shown to have any relation to the crime of rape.
In holding that the single instance of conduct in this case was not relevant to a determination of whether a rape occurred, we do not hold that a victim’s prior sexual history may never be relevant and subject to cross-examination. Nevertheless, before such evidence may be 122held admissible, the defendant must clearly demonstrate that the evidence of prior sexual conduct is genuinely probative of the issue of consent, rather than a reflection of the victim’s promiscuity.
In the instant case, the SANE nurse examined A.W. on January 19, 2010, and performed a “dye uptake” examination of A.W.’s external vaginal and rectal areas. The dye indicated recent trauma to A.W.’s rectal and external vaginal areas. The nurse testified that she did not perform an internal examination, stating, “We don’t perform those on children eleven years old ... [i]f it was an adult, we would insert a speculum in there and do swab for DNA and all. But on kids, we don’t do that because she had reported that she wasn’t sexually active and that was the first time.” Thus, no DNA evidence was collected to prove that either J.H. or the defendant had sexual intercourse with A.W. on the night in question. Additionally, A.W. testified that she took a shower after the incident.
Further, although no evidence was introduced with regard to A.W.’s prior sexual history, in its opening argument, the state attempted to portray A.W. as sexually inexperienced by stating:
[Tjhis case is about an 11-year-old girl and the man who destroyed her innocence.
[[Image here]]
That night, Calvin Authier took her innocence. You can’t give that back to her but, ladies and gentlemen, one thing that you can do, after you’ve heard all the evidence, the one thing you can give her is justice.
Although the trial court ruled to limit the evidence regarding A.W.’s prior sexual behavior, the jury was made aware that prior to the night in question, A.W. had sent at least one sexually suggestive text message to J.H. The jury also heard testimony that J.H. was not forced to engage in Insexual intercourse with A.W. on the night of the incident. Both J.H. and the defendant testified that the sexual intercourse between A.W. and J.H. that night was consensual. That evidence challenged the state’s theory of the case and the defendant’s right to cross-examine the witnesses was not wholly abridged.
After reviewing the evidence and relative statutes and jurisprudence, we conclude that the trial court did not err in excluding evidence of prior sexual intercourse between A.W. and J.H. That evidence is not relevant to a determination of whether the defendant engaged in sexual intercourse with A.W. on the night of the *507 slumber party. The fact that A.W., although only 11 years old at the time, consented to intercourse with 12- or 13-year-old J.H. — one week prior to the night in question — is not probative of any subsequent conduct by the defendant. The admission of such evidence would allow the victim to be confronted with accusations of her own chastity — the very thing the rape shield law was enacted to prohibit.
This assignment lacks merit.

Excessive Sentence

Finally, the defendant contends the sentence of life in prison at hard labor without benefit of probation, parole or suspension of sentence is excessive under the facts and circumstances of this case. He argues that his sentence is excessive and disproportionate under State v. Dorthey, 623 So.2d 1276 (La.1993).[9]
124The record reveals that the defendant was adjudicated a fourth felony habitual offender based upon the following convictions:
—a January 19, 1999, conviction by guilty plea for simple burglary committed on October 18,1998;
—a September 5, 2000, conviction by guilty plea for simple burglary committed on April 4-6,1999;
—an August 8, 2007, conviction by guilty plea for felony theft committed on July 14, 2007;
—the instant offense.
Thus, under LSA-R.S. 15:529.1(A)(4)(b), the defendant was subject to a life sentence, without parole, because two of his prior convictions (simple burglary) were punishable by imprisonment for 12 years or more, and his latest offense was a sex offense where the victim was under age 18.[10]
12fiWhere there is a mandatory sentence, there is no need for the trial court to justify, under article 894.1, a sentence it is legally required to impose. State v. Burd, supra; State v. Koon, 31,177 (La.App.2d Cir.2/24/99), 730 So.2d 503. In State v. Dorthey, supra, and State v. *508 Johnson, 1997-1906 (La.3/4/98), 709 So.2d 672, the supreme court addressed the issue of mandatory sentences in the context' of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case.
In the instant case, the defendant did not appeal his adjudication as a fourth felony offender. Nor did he present any evidence that he is exceptional and that the life sentence without parole is not meaningfully tailored to him. A presen-tence investigation report was prepared for the defendant and is included with the appellate record. The report revealed that the defendant has a long criminal history, including a number of arrests with “unknown” dispositions for drug offenses, unauthorized use of a motor vehicle, battery, domestic abuse battery, illegal possession of stolen things and miscellaneous other misdemeanor offenses. The report revealed essentially no social or employment history for the defendant. The nonviolent nature of the defendant’s prior felony convictions is not determinative of whether his sentence is excessive. The nonviolent nature of 12r,the instant or past crimes may not solely form the evidence which justifies rebutting the presumption of constitutionality; the lack of violence cannot be the main reason for declaring such a sentence excessive. State v. Robbins, 43,240 (La.App.2d Cir.6/4/08), 986 So.2d 828, writ denied, 2008-1438 (La.2/20/09), 1 So.3d 494.
Because the defendant has not shown that his sentence is excessive, this assignment of error is without merit.
CONCLUSION
For the reasons set forth herein, the defendant’s conviction and sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AFFIRMED.
STEWART, J., concurs in result.

. In accordance with LSA-R.S. 46:1844(W), the victim is referenced only by her initials. *496 To further protect her privacy, all pertinent persons and/or witnesses also will be referenced by initials.

. In her interview at the Gingerbread House Children’s Advocacy Center, A.W. initially stated that J.H. was 13 years old. Later in the interview, she stated that he was 12 years old.

. According to the testimony, the defendant and S.B. lived together in an apartment in Shreveport. However, they often spent weekends at Ms. H.'s home near Converse, Louisiana.

. During her testimony at trial, Ms. H. testified that J.H. has a "bipolar disorder with psychotic features,” post-traumatic stress disorder and attention deficit/hyperactivity disorder. According to Ms. H., J.H.'s post-traumatic stress disorder is a result of “the dysfunctional family lifestyle.”

. When questioned about his knowledge of anal sex, J.H. testified that he learned about that particular sexual act from his sisters.

. When asked to spell the word "consensual” during the trial, J.H. was unable to do so.

. Ms. H. was eventually arrested for and pled guilty to second offense possession of marijuana as a result of her conduct on this weekend.

. The original announcement proclaimed that the verdict was 10-2; however, the polling slips showed a verdict of 11-1.

. In his motion to reconsider sentence, which primarily raised arguments in the nature of a motion for new trial, the defendant argued that his sentence was excessive because “the evidence adduced at trial was weak” and because his prior offenses were not crimes of violence. He also urged that his previous convictions were "invalid”; therefore, they could not be used to enhance his sentence. However, those issues were not raised on appeal.

. LSA-R.S. 15:529.1(A)(4)(b) provides:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * *
(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:450 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.