LOLLEY, J.
| following a jury trial, the defendant, Phillip Orlando Johnson, was convicted of aggravated rape and aggravated kidnapping, violations of La. R.S. 14:42 and La. R.S. 14:44, respectively. He was subsequently sentenced to life imprisonment at hard labor without benefits on each count, to be served concurrently. Johnson appeals his convictions, which we affirm for the following reasons.
. FACTS
On November 3, 2010, K.J., a 13-year-old girl, was walking to school down W. 73rd Street in Shreveport, Louisiana. She was grabbed by a man wearing a cap and bandana over his face and dragged to an abandoned, burned-out house on the street. Cordell Morris and Samantha Thompson witnessed the man grab K.J. and drag her in.to the abandoned house. Thompson called the police, and Officer Rodney Medlin of the Sheveport Police Department responded to the call, arriving shortly after it was made. Officer Medlin entered the house where the man had dragged K.J. He saw the man standing over K.J. and witnessed the perpetrator run away. Officer Medlin secured K.J. in his patrol car. Soon after this, the perpetrator was apprehended, and K.J. positively identified him as her attacker. She was then taken to Willis-Knighton Hospital for a medical examination.
Ultimately, Johnson was charged via a superseding indictment with the aggravated rape and aggravated kidnapping of KJ. After a jury trial, the jury unanimously found Johnson guilty as charged. At the subsequent sentencing hearing, Johnson made an oral motion for post-verdict judgment of acquittal, which the trial court denied. Johnson waived sentencing |2delays, and the trial court sentenced him to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence, on each count. The sentences were ordered to be served concurrently. This appeal followed.
DISCUSSION

Sufficiency of the Evidence

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found *448 the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does- not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), -21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, .1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in [spart. State v. Eason, 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 - (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the .reviewing court may impinge on that, discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, 2005-0213 (La.01/19/06), 921 So.2d 94.

\ ¿Aggravated Rape

In his first assignment of error, Johnson submits that the evidence was insufficient to convict him of- aggravated rape, specifically because K.J.’s trial testimony contradicted her initial statements regarding her attack, creating reasonable doubt as'to'his guilt. We disagree.
Regarding the crime of rape, La. R.S. 14:41 provides:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
C. For purposes of this Subpart, “oral sexual intercourse” means'the intentional engaging in any of the following'acts with another person:'
*449 (1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
Specifically, as to the crime of aggravated rape, La. R.S. 14:42 provides, in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed 'to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is. overcome by force.
(2) When the victim is prevented from resisting the act-by threats of great and immediate bodily harm, accompanied by apparent power of execution. |fi(3) When the victim is prevented from resisting the act because the of fender is armed with a dangerous weapon.
The testimony of a sexual assault victim alone is sufficient to convict á defendant. State v. Drake, 46,232 (La.App.2d Cir.06/22/11), 71 So.3d 452. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. Id.
Here, the evidence presented at, trial was sufficient for the jury to find Johnson guilty of aggravated rape. Notably, pursuant to the statute, aggravated rape may consist of either oral or vaginal sexual intercourse. At trial, K.J. testified that Johnson forcibly dragged her into the abandoned, burned-out house, while armed with a knife, and then pulled his penis out of his pants and instructed her to “suck this.” K.J. stated that Johnson forced her to perform oral intercourse on him as he stood over her, and that his penis went into her mouth multiple times. K.J. also stated that Johnson then attempted to put his penis in her vagina, but was unable to do so. Officer Medlin testified that’when he arrived at the house, he saw Johnson on top of K.J., who had her pants pulled down and her shirt pulled up.
We recognize the inconsistencies between ,K.J.’s trial testimony regarding the attack and some of her prior statements. Immediately after the attack, K.J. was taken to the. hospital and examined by Rita Trant,. a sexual assault nurse. According to Trant, K.J. reported that her attacker had inserted his penis in her vagina, but that she had not performed oral intercourse on him. The day after her attack, K.J. was taken to the Gingerbread House, an advocacy center for abused children, where she was 1 ^interviewed by a staff member. The video :of her interview ,at the Gingerbread House was played for the jury. In that interview, K.J.' stated that her attacker had put his penis in her vagina, rather than her mouth.
Although Johnson’s assignment of error purports to question the sufficiency of evidence regarding the crime of aggravated rape, the gist of his argument goes to the credibility of the victim’s statements during the investigation and trial. Although K.J.’s account changed at trial, she was questioned about the discrepancies, and she gave an explanation as to why her account changed. At trial, K.J. freely admitted that some of her testimony was different than what she said initially in the Gingerbread House, interview, explaining that she was embarrassed, did not want to talk about the incident, and wanted to terminate the interview as quickly as possible. In convicting Johnson of aggravat *450 ed rape, the jury obviously chose to believe KJ.’s trial testimony regarding the oral intercourse and her explanation as to why she previously said that Johnson had vaginally raped her. The jury was able to observe KJ.’s demeanor and listen to her testimony at trial, under questioning by both the prosecutor and the defense counsel. We are not called to assess the credibility of witnesses or reweigh evidence. As stated, the jurisprudence is constant and clear: a reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. Here, as the victim of a sexual assault, KJ.’s testimony alone is sufficient to support Johnson’s conviction. Although her trial testimony differed from her initial statements, she explained her change in statements and articulated facts supporting the |7required elements of aggravated rape. Notably, either account related by KJ. satisfies the elements required to prove aggravated rape. Considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of aggravated rape proven beyond a reasonable doubt, despite the change in KJ.’s description of the account.
Furthermore, in addition to KJ.’s testimony, other evidence existed tending to support the fact that Johnson had engaged in sexual intercourse with KJ. Officer Medlin testified that when he came upon Johnson and KJ. in the house, Johnson fled through a doorway toward the backyard, dropping an object, which Off. Med-lin later discovered was a knife. He stated that Johnson was wearing a black beanie, a brownish-colored jacket, and latex gloves. According to Off. Medlin, after securing KJ., he searched the area and located two latex gloves and a used condom crumpled up near the fence where Johnson was ultimately apprehended. Johnson voluntarily submitted to DNA testing on the day of the incident. Dr. Candace Jones, an expert in DNA analysis with the Northwest Louisiana Crime Lab, testified that she examined the evidence in this case. She testified that Johnson’s DNA was found on the inside of the condom and that KJ.’s DNA was found on the outside of the condom.
Considering the foregoing, the evidence was sufficient to convict Johnson of aggravated rape. Therefore, this assignment of error is without merit.
| ^Aggravated Kidnapping
In his second assignment of error, Johnson argues that the evidence was insufficient to convict Johnson of aggravated kidnapping. Specifically, Johnson maintains that the state was unable to prove that he had a dangerous weapon because: (1) there were no fingerprints on the knife to connect it to him; and, (2) the only person who saw a knife was KJ., who is not credible based on her inconsistent statements. Also, Johnson argues that the state failed to prove that he intended to force KJ. to give up anything of apparent or prospective value, because the evidence indicated that Johnson did not have intercourse with K J.
Louisiana R.S. 14:44 provides, in pertinent part:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
*451 (2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
In determining whether an aggravated kidnapping occurred, the crucial question is whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim’s fear and hope of eventual release in order to gain compliance with his demands. State v. Arnold, 548 So.2d 920 (La.1989); State v. Ashley, 44,655 (La.App.2d Cir.09/23/09), 22 So.3d 1045, writ denied, | n2009-2305 (La.04/23/10), 34 So.3d 271. Sexual gratification is something of value. State v. McCray, 44,142 (La.App.2d Cir.05/13/09), 12 So.3d 990, writ denied, 2009-1400 (La.02/12/10), 27 So.3d 843.
The evidence presented at trial is sufficient to support Johnson’s conviction for aggravated kidnapping. Considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of aggravated kidnapping proven beyond a reasonable doubt. Here, the evidence established that Johnson forcibly seized and carried K.J. from one place to another in order to force her to comply with his sexual demands. KJ. testified that as she was walking to school, Johnson grabbed her by her neck, held a knife to her stomach and dragged her into an abandoned, burned-out house. Thompson and Morris testified they saw Johnson grab KJ. off the street by her neck and drag her into the burned-out house as she screamed for help. Further, KJ. testified that once inside the house, Johnson forced her to perform oral intercourse with him and then attempted to engage in vaginal intercourse with her, but was unsuccessful. Officer Medlin testified that when he arrived at the house, he saw Johnson on top of KJ., who had her pants pulled down and her shirt pulled up. Officer Medlin noted that Johnson had something in his hand and witnessed Johnson drop something as he fled. Officer Medlin later determined the object to be a knife. Clearly, the evidence at trial satisfied all of the elements required to prove the crime of aggravated kidnapping. Further, the jury was entirely reasonable in accepting the | ^testimony of the witnesses whose accounts of the incident established the requisite elements of the crime. Therefore, this assignment of error is without merit.

Motion for Mistrial

In his third assignment of error, Johnson claims that the trial court erred in denying his motion for mistrial on grounds that the state’s witnesses identified Johnson at trial as the man in an “orange jumpsuit” several times. The defense argues that although Johnson was clearly dressed in an orange shirt, these statements by the witnesses unduly prejudiced the jury. We disagree.
Compelling a criminal defendant to stand trial in readily identifiable prison attire over his express objection infringes upon his presumption of innocence and denies the defendant due process of law. State v. Spellman, 562 So.2d 455 (La.1990); State v. Cleveland, 25,628 (La.App.2d Cir.01/19/94), 630 So.2d 1365; State v. Licona, 13-543 (La.App. 5th Cir.05/21/14), 141 So.3d 333, writ denied, 2014-1806 (La.04/02/15), 163 So.3d 791. Such a practice is “inherently prejudicial” to the defendant and threatens the “fairness of the factfinding process.” State v. Spellman, supra; State v. Hullaby, 26,227 (La.App.2d Cir.08/19/94), 641 So.2d 1094.
Regarding mistrials, La. C. Cr. P. art. 775 provides, in pertinent part:
*452 Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
Mistrial is a drastic bemedy which is authorized only where substantial prejudice will otherwise result to the accused. State v. Roberson, 46,697 (La.App.2d Cir.12/14/11), 81 So.3d 911, writ denied, 2012-0086 (La.04/20/12), 85 So.3d 1270. The determination of whether actual prejudice has. occurred lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. State v. Authier, 46,903 (La.App.2d Cir.04/25/12), 92 So.3d 494, writ denied, 2012-1138 (La.11/02/12), 99 So.3d 662.
Even if a mistrial was warranted, the failure to grant a mistrial would not result in an automatic reversal of the defendant’s conviction, but would be a trial error subject to the harmless error analysis on appeal. State v. Givens, 1999-3518 (La.01/17/01), 776 So.2d 443; State v. Roberson, supra. Trial error is harmless where the verdict rendered is “surely unattributable tq the error.” State v. Johnson, 1994-1379 (La.11/27/95), 664 So.2d 94.
Here, the trial court did not abuse its discretion in denying the defense’s motion for mistrial. Johnson was not forced to. wear prison attire at trial. Rather, he chose, of his own volition, to wear an orange-colored shirt, which was similar in color to that of a prison jumpsuit. Although two witnesses initially identified Johnson in court as the. man wearing an “orange jumpsuit,” both witnesses corrected themselves,' stating that Johnson was-wearing an “orange shirt.” As noted by the trial court, the jury was not misled by the comments because when he stood up, the jurors had the opportunity to see that Johnson was clearly not wearing prison attire. Johnson failed to demonstrate that he was prejudiced by the witnesses’ comments. Accordingly, this assignment of error is without merit.

11¾Motion in Limine

In his fourth assignment of error, the defense argues that the trial court erred in allowing at trial the La. C.E. art. 404(B) testimony from B.T. and R.W., two other teenagers whom Johnson allegedly approached prior to the attack on K.J. Johnson claims that although B.T. and R.W. alleged that they had some contact with him, there were no threats to their lives and there was no real physical contact. He further argues that their testimony does not show that Johnson had some type of plan, scheme, or behavior to kidnap or rape girls or children. Johnson submits that if the jury had not heard this testimony, he would have been found not guilty or guilty of a lesser included offense. Therefore, Johnson argues that this testimony was highly prejudicial and should have been excluded from trial. We disagree. '
Louisiana C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, -knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution- in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part *453 of the act or transaction that is the subject of the present proceeding.
For evidence of other crimes, wrongs, or acts by a defendant to be admissible, the state must prove with clear and convincing evidence that: (1) the other acts or crimes occurred and were committed by defendant; (2) the other acts satisfy one of the requirements of Article 404(B)(1); and, (3) the probative value of the evidence outweighs its prejudicial effect. State v. White, 36,935 (La.App.2d Cir.06/06/03), 850 So.2d 751, writ denied, 2003-2616 (La.05/14/04), 872 So.2d 510.
Louisiana O.E. art. 412.2 creates an exception to the rule set forth in La. C.E. art. 404(B)(1) and governs the admission of evidence of similar crimes, wrongs, or acts in sex offense cases. It provides: ■
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter 'to which it is relevant subject to the balancing test provided in Article 403.
B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance. of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
The balancing test required for a determination of admissibility is contained in La. C.E. art. 403, which provides:
Although relevant, evidence may be excluded if its probative value -is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Thus, other crimes,, wrongs, or acts involving sexually assaultive behavior or which indicate a lustful disposition toward children may be admissible under La. C.E. art. 412.2 if their probative value substantially outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. State v. Johnson, 43,843 (La.App.2d Cir.01/28/0,9), 2 So.3d 606, writ denied, 2009-0464 (La.11/06/09), 21 So.3d 300.
Louisiana C.E. art.- 412.2 does not require that the prior acts be identical in nature to the charged offense. State v. Williams, 11-876 (La.App. 5th Cir.03/27/12), 91 So.3d 437,- writ denied, 2012-1013 (La.09/21/12), 98 So.3d 334. The Louisiana Supreme Court recently held that La, C.E. art. 412.2 does not strictly limit evidence of past “sexually assaultive behavior” to sexual offenses defined by state law. State v. Layton, 2014-1910 (La.03/17/15), 168 So.3d 358.
A trial court’s ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Scales, 1993-2003 (La.05/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); State v. Preston, 47,273 (La. App.2d Cir.08/08/12), 103 So.3d 525. The erroneous introduction of other crimes evidence is a trial error and subject to harmless error review. State v. White, supra.
The trial court did not abuse its discretion in finding that evidence of Johnson’s prior bad acts, through the testimony of *454 B.T., R.W., and their mothers, was admissible. This testimony established that Johnson had previously engaged in stalking and harassing behavior toward young girls while they were walking to school alone. This evidence was relevant to show a pattern of behavior and that Johnson has a lustful disposition toward children. Further, the trial court gave a limiting instruction immediately prior to the testimony of these witnesses and in the final jury instructions. _[1jFurther, assuming that the testimony was improperly admitted, any such error was harmless, because the other evidence adduced at trial was clearly sufficient to support Johnson’s convictions, and the verdicts were surely unattributable to any error. This assignment of error is without merit.
Batson Challenge
In his final assignment of error, Johnson argues the trial court erred in denying his Batson challenge, wherein he claimed that the state struck 11 African-Americans from the jury, and because the record does not suggest a rational reason why, it was only for their race. We disagree.
In reply, the state argues that it exercised only six peremptory challenges against African-Americans, and at trial Johnson only raised a Batson objection only as to the first three African-Americans peremptorily struck by the state from the first and second jury panels. According to the state, Johnson did not renew his objection after the third jury panel. Therefore, the state only addresses the trial court’s Batson ruling only insofar as it concerns the three initial African-Americans peremptorily struck from the jury, and for which the objection was made. The state notes that there were 10 African-Americans on the first and second jury panels and it peremptorily struck only three of them, and argues that striking less than 33% of African-Americans falls woefully short of establishing a prima facie case of racial discrimination. Further, the state claims that Johnson has failed to cite any particular statements, questions, or comments by the state during voir dire which would support an inference of discriminatory intent, and notes that ultimately the jury was comprised of six African-! fiArciericans and six Caucasians. The state argues that Johnson failed to demonstrate relevant circumstances sufficient to raise an inference that the peremptory challenges were used to strike jurors on account of their race.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the use of peremptory challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. The Batson decision is codified in La. C. Cr. P. art. 795(C), whieh provides that no peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. The three-step Batson process was described in Rice v. Collins, 546 U.S. 333, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), as follows:
A defendant’s Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his *455 burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike. (Internal quotations and citations omitted.)
To establish a prima facie case, the objecting party must show: (1) the striking party’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and, (3) relevant circumstances sufficient to raise an inference that the peremptory challenge 117was used to strike the venire person on account of his being a member of that cognizable group. If the trial court determines the opponent failed to establish the threshold requirement of a prima facie case, then the analysis is at an end, and the burden never shifts to the proponent of the strike to articulate neutral reasons. State v. Nelson, 2010-1724 (La.03/13/12), 85 So.3d 21.
In State v. Green, 1994-0887 (La.05/22/95), 655 So.2d 272, 288, the supreme court outlined a multifactor approach for determining whether a prima facie case has been made:
The defendant may offer any facts relevant to the question of the prosecutor’s discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination.
No formula exists for determining whether the defense has established a prima facie case of purposeful racial discrimination. A trial judge may take into account not only whether a pattern of strikes against African-American venire persons has emerged during voir dire, but also whether the prosecutor’s questions and statements during voir dire examination and in exercising her challenges may support or refute an inference of discriminatory’purpose. State v. Jacobs, 1999-0991 (La.05/15/01), 803 So.2d 933, cert denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002). Batson accords a trial court considerable flexibility and broad discretion in this regard because “trial judges, experienced in supervising 11⅜voir dire, will be able to decide if the circumstances concerning the prosecutor’s use of peremptory challenges create a prima facie case of discrimination against black jurors.” Batson, supra-, State v. Jacobs, supra.
The trial court plays a unique role in the dynamics of voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. See State v. Jones, 42,531 (La. App.2d Cir.11/07/07), 968 So.2d 1247. The trial court’s determination that the defense failed to set forth a prima facie case of purposeful discrimination merits great deference on appeal. State v. Mason, 47,642 (La.App.2d Cir.01/16/13), 109 So.3d 429, writs denied, 2013-0423 (La.07/31/13), 118 So.3d 1116, 2013-0300 (La.09/13/13), 120 So.3d 279, citing State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir.1991), writ denied, 594 So.2d 1317 (La.1992). The trial court’s ruling regarding whether there was any discriminatory intent in the state’s peremptory challenges is reviewed with great *456 deference. State v. Mason, supra; State v. Robinson, 46,737 (La.App.2d Cir.12/14/11), 79 So.3d 1270, unit denied, 2012-0487 (La.08/22/12), 97 So.3d 378.
Here, although the state used six of eight of its peremptory challenges (including one on án alternate juror) to strike African-Americans, the defense raised á Batson objection only once during voir dire, after the state had used three of four peremptory challenges to strike African-Americans. In failing to renew its Batson objection thereafter, the defense waived the | ^Batson claim with respect to the state’s remaining three peremptory challenges used to strike African-Americans. See La. C. Cr. P. art. 841; State v. Juniors, 2003-2425 (La.06/29/05), 915 So.2d 291.'
The trial court properly denied Johnson’s Batson challenge. Johnson’s only evidence to raise the inference of discriminatory intent was the state’s use of three of four of its peremptory challenges to remove African-Americans. A review of the record does not reveal any inference of racial discrimination on the part of the state during voir dire. Further, the jury that was ultimately empaneled consisted of six African-Americans jurors and six Caucasian jurors, and the state still had five peremptory challenges that it did not use. Johnson failed to cany his burden of establishing a prima facie showing of racial discrimination in the state’s exercise of its peremptory challenges. Therefore, this assignment of error is without merit.
Conclusion
For the foregoing reasons, the convictions and sentences of Phillip Orlando Johnson are affirmed.
AFFIRMED.