PITMAN, J.
A unanimous jury convicted Defendant Steven D. Robinson of one count of molestation of a juvenile under age 17 and one count of molestation of a juvenile under age 13. The trial court sentenced him to serve 7 years at hard labor for Count One and to serve 50 years at hard labor for Count Two, with the first 25 years imposed without benefit of probation, parole or suspension of sentence. The trial court ordered these sentences to run consecutively. The trial court also ordered that for both counts, Defendant pay court costs and a $250 fine to the Indigent Defender's Office and that these costs and fines run concurrently. Defendant appeals. For the following reasons, we affirm Defendant's convictions and sentences.
FACTS
The state charged Defendant by bill of information with one count of molestation of a juvenile under the age of 17 and one count of molestation of a juvenile under the age of 13, in violation of La. R.S. 14:81.2. As to Count One, the state alleged that on or about October 9, 2015, Defendant molested Y.S.,[1] who was under the age of 17. As to Count Two, the state alleged that on or about January 25, 2011, Defendant molested L.A., who was under the age of 13.
On November 16, 2015, Defendant filed a motion requesting a pretrial hearing to determine the admissibility of any La. C.E. art. 404(B) evidence the state intended to introduce at trial.
On June 7 and September 8, 2016, and January 4, 2017, the state provided notice *728 pursuant to La. C.E. art. 412.2 that it intended to use evidence at trial of Defendant's other crimes, wrongs or acts involving sexually assaultive behavior or acts which indicate a lustful disposition toward children. Specifically, the state intended to introduce evidence of molestation of a juvenile, A.F., between June 12, 1982, and June 12, 1984; molestation of a juvenile, T.F., between May 23, 1982, and May 23, 1984; molestation of a juvenile, Y.S., between September 15 and October 10, 2015; and molestation of a juvenile, J.W., between May and August 2001.
The jury trial began on February 6, 2017. Y.S., born July 23, 1999, lives with her grandmother in Shreveport. She testified that when she was 15 years old, she met Defendant at a party thrown by her mother's friend. She stated that she saw Defendant again a few days after the party when he drove his truck on the street near her house. When she rebuffed his efforts to talk to her, he told her that he knew her dad. He also gave her his phone number to call if she ever needed a ride. She testified that a few days later, she missed the bus to school, so she called Defendant and he took her to school. At the end of the school day, Defendant was waiting at the school, with his four-year-old daughter, and offered her a ride home. She stated that instead of taking her home to her grandmother's house, Defendant took her to his apartment, and she reluctantly went inside. After Defendant prepared food for his daughter, he offered to show Y.S. around the apartment. They went upstairs to his bedroom, and he shut the door to the room, placed her cellphone on the dresser and asked her to sit on his bed. He sat by her on the bed and touched her leg and breasts. She stated that she pushed his hand and told him to stop. He then began undoing his clothing and then held her arm so he could remove her pants and underwear. She stated that he got on top of her and she tried to push him off, but could not do so because he was stronger than her. She testified that he then had sex with her. She noted that she was scared and told him to stop. He then went into the bathroom and she went outside. He told her not to make a scene and get him into trouble. She then got in his truck with him and his daughter, and he drove her home. She did not tell her grandmother what happened.
Y.S. testified that a few weeks later, she called Defendant and asked for a ride home. She noted that she asked other people for a ride first, but they were unable to help her, and she needed to be home before her curfew. Defendant picked her up in his truck, but instead of taking her to her home, he parked the truck in front of an abandoned house. He got out of the truck, unzipped his pants, reentered the truck and locked the doors. She tried to exit the truck so she could walk home, but she could not open the door. He scooted over near her, started rubbing and touching her and tried to kiss her. She told him to stop, and he told her to be quiet. He pressed up against her so she could not move, pulled down her pants and underwear, got on top of her and had sex with her. She stated that after he drove her home, she did not tell her grandmother what happened because she was scared. She explained that she saw guns in Defendant's truck and apartment, and Defendant told her he would kill her if she said anything.
Y.S. further testified that she last saw Defendant when she called him and asked for a ride home from a party the night before she was to leave to attend the Youth Challenge Program ("YCP") in South Louisiana. Her grandmother told her the police would come get her if she was not home by her curfew. She asked several people for a ride home, but no one *729 would help her, so she called Defendant. He picked her up; but instead of driving her home, he drove her to the parking lot of an apartment complex and told her that he was waiting on a friend. He started touching her and rubbing her leg and chest and tried to kiss her. He got out of the truck and undid his clothing and then got back in the truck. She told him, "I know you're not fixing to do that again," and he responded that he was not going to do anything to her. She tried to exit the truck, but the door would not open. Defendant held her down, removed her pants and underwear and had sex with her. He then drove her to her grandmother's house. She explained that she was crying and upset when she got home, and her grandmother asked her what was wrong. She admitted that she lied and told her grandmother she did not want to go to YCP the next day.
Y.S. also testified that she saw Defendant additional times between these three instances, but nothing happened those times. She noted that Defendant would see her walking to the park or to her grandmother's house and would follow her. One time he came to her grandmother's house, and her grandmother told him not to pick up Y.S. or take her anywhere. Y.S. noted that she turned 16 between the first and last times Defendant raped her.
Y.S. further testified that she told someone what happened with Defendant when she attended YCP. She believed she could tell someone there because the program was "far away" from Shreveport. She stated that she told one of the instructors at the program, and then she went to the hospital and talked to law enforcement. She remained at the program for three weeks, and then she spoke with a detective in Shreveport when she returned.
Corporal Randy Clouatre of the Gonzales Police Department testified that he was dispatched to St. Elizabeth Hospital in Gonzales on October 12, 2015, to speak with Y.S. Y.S. told him that the Friday before attending YCP, she was raped by Defendant. Y.S. told her that since June 2015, Defendant had raped her ten or more times. Cpl. Clouatre noted that they were not able to collect any physical evidence from Y.S., including a sexual assault kit, because she had used the bathroom and showered multiple times since the most recent incident. Cpl. Clouatre explained that once he determined that these incidents occurred in Shreveport, he called the Shreveport Police Department.
B.S., Y.S.'s grandmother, testified that she saw Defendant once when he brought Y.S. home from school. B.S. told him not to take Y.S. anywhere without her permission. She stated that the night before Y.S. left for YCP, she came home crying and said she did not want to attend YCP. While she was attending YCP, Y.S. called B.S. and told her what Defendant had done.
Detective De'Andre Belle testified that he received a report from the Gonzales Police Department that a 16-year-old female had been sexually assaulted multiple times by Defendant. Det. Belle researched Defendant's name and discovered several reports from women accusing him of sexual assault. He interviewed Y.S. on November 2, 2015, at her grandmother's house; and during this interview, Y.S. called Defendant and he arrived at the interview ten minutes later. Det. Belle explained that he did not arrest Defendant for sexual assault, but took him into custody because he did not have a driver's license. After interviewing Y.S., he contacted other women who had previously accused Defendant of assaults, including L.A. and A.F. A.F. provided him with the name of her older sister, T.F., who had also been molested by Defendant. He stated that after Defendant's *730 arrest was reported on the news, he was contacted by J.W., who also reported being assaulted by Defendant.
L.A., born on April 19, 1998, testified that in 2010, when she was 12 years old, she and her younger sisters visited her grandmother's house every day after school. Her grandmother lived across the street from Defendant's father, who is L.A.'s uncle. She stated that sometimes when she and her sisters visited their uncle, Defendant would be at his house. During one visit, Defendant told L.A. that he wanted to show her something in a bedroom. He came up behind her, kissed her neck and touched her genitals through the outside of her clothing. He stopped touching her when they heard someone in the hallway. L.A. and her sisters then left their uncle's home. Twenty minutes later, Defendant appeared at L.A.'s grandmother's house with candy and chips for L.A. and her sisters and told L.A. to let him know if she needed anything. L.A. reported the incident to her school counselor, who called L.A.'s mother. L.A. stated that the police came and made a report.
S.G., L.A.'s mother and Defendant's cousin, testified that Defendant called her, mentioned the police looking for him and asked if it had to do with him hugging and kissing L.A.
Detective Jeff Allday of the Shreveport Police Department testified that in January 2011, he was assigned to the case involving L.A. He stated that he interviewed L.A., and she advised him that she was sexually assaulted by Defendant. He spoke with Defendant in March 2011, but did not arrest him because there was not enough probable cause, stating that other than L.A.'s statement, there was no evidence to corroborate that the incident occurred.
A.F., who was born in 1972, testified that she grew up living with her mother and eight of her half-siblings. Her mother was not home often, so the oldest sisters took care of the younger siblings. She and her sisters slept in one room, and her brothers slept in another room. She testified that Defendant came into the girls' room and touched A.F.'s genitals over the top of her clothing and then touched her sister. If they locked the door to their room, Defendant would pick the lock. After her mother passed away in 2013, A.F. reported Defendant's actions to law enforcement.
T.F. testified that she first met Defendant in 1983 when she was 15 years old. She explained that Defendant is her older half-brother and they came into contact when she moved in with their mother and other siblings after living with her grandmother. Some nights she was awoken by Defendant touching her genitals, and this continued for a year and a half. She reported his actions to her mother, but never contacted law enforcement. She testified that in November 2015, she was contacted by law enforcement and asked if she knew Defendant.
J.W., born February 13, 1987, testified that she met Defendant in the summer of 2001 when she was 14 years old and he was 35 years old. They lived across the street from each other and she visited his house several times a week during that summer. They would talk, watch television and have sex. She did not tell anyone about the relationship until 2016 when she saw Defendant's arrest on the news. J.W. noted that she sought counseling and then reported Defendant's actions to Det. Belle.
After the state rested, Defendant testified on his own behalf. He stated that his date of birth is November 3, 1964. He completed the 12th grade and had three prior felony convictions for theft, simple burglary and second degree battery. He *731 also stated that he has cancer on his vocal cords. He corroborated Y.S.'s testimony about how they met, that he gave her his phone number and that he gave her a ride to her grandmother's house about three times. He also corroborated B.S.'s testimony that she told him not to give Y.S. rides without her permission. He denied having any type of sexual contact with Y.S. or that Y.S. ever went to his apartment. He corroborated L.A.'s testimony that he was present at his father's house at times L.A. was visiting, but denied assaulting or inappropriately touching her He corroborated testimony by A.F. and T.F. that they lived in the same house and that he went into their bedroom, but denied inappropriately touching them. He corroborated J.W.'s testimony about how they met and that she spent time at his house, but denied having any interactions with her or doing anything improper with her. He stated that he does not carry a gun and does not have a gun in his house or vehicle.
On February 7, 2017, a unanimous jury found Defendant guilty as charged of both counts.
On February 10, 2017, Defendant filed a motion for post-verdict judgment of acquittal. He argued that the state failed to prove beyond a reasonable doubt that he was guilty of the crimes for which he was convicted, failed to exclude every reasonable hypothesis of innocence and failed to prove every element of each offense.
A hearing was held on March 3, 2017. The trial court denied Defendant's motion and determined that the state proved beyond a reasonable doubt that Defendant committed two acts of molestation and that the evidence was sufficient to convict him. Defendant waived the 24-hour sentencing delay, and the trial court proceeded with sentencing. As to Count One, molestation of Y.S., a juvenile under the age of 17, it sentenced Defendant to serve 7 years at hard labor. As to Count Two, molestation of L.A., a juvenile under the age of 13, it sentenced Defendant to serve 50 years at hard labor, with the first 25 years imposed without benefit of probation, parole or suspension of sentence. It ordered that these sentences run consecutively to one another. It also ordered that for both counts, Defendant shall pay court costs and a $250 fine to the Indigent Defender's Office and that these costs and fines run concurrently.
On March 9, 2017, Defendant filed a motion to reconsider and vacate unconstitutionally excessive sentence. On March 15, 2017, the trial court denied Defendant's motion.
Defendant appeals.
DISCUSSION
Sufficiency of the Evidence
Defendant argues that the state failed to prove both counts of molestation of a juvenile beyond a reasonable doubt. Specifically, he contends that the state failed to prove that the juveniles were under his control or supervision or that he used force, threats, violence or intimidation. He also argues that the actions alleged by L.A. do not constitute lewd and lascivious acts.
The state argues that the evidence was sufficient to support both convictions. Regarding Count One, Y.S.'s testimony showed that Defendant committed lewd and lascivious acts with the use of force and/or influence by a position of control in that he forced sexual intercourse on her three times. Regarding Count Two, L.A.'s testimony showed that Defendant committed lewd and lascivious acts with the use of force and/or influence by a position of control in that he, at age 46, held her, at age 12, from behind, kissed her neck and touched her genitals through her clothing.
*732 It emphasizes that these actions were lewd and lascivious and notes that the victim's testimony alone can suffice to convict a defendant in a sexual assault case. It further argues that the testimonial evidence from Y.S. and L.A., as well as from A.F., T.F. and J.W., was sufficient that a rational trier of fact could find Defendant guilty on both counts.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold , 603 So.2d 731 (La. 1992). The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana , 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. State v. Hearold , supra. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta because those issues are moot. Id. On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , supra ; State v. Hearold , supra. See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Robertson , 96-1048 (La. 10/4/96), 680 So.2d 1165.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen , 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writ denied , 02-2595 (La. 3/28/03), 840 So.2d 566, and writ denied , 02-2997 (La. 6/27/03), 847 So.2d 1255, and cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness-if believed by the trier of fact-is sufficient to support for a requisite factual conclusion. State v. Watson , 32,203 (La. App. 2 Cir. 8/18/99), 743 So.2d 239, writ denied , 99-3014 (La. 3/31/00), 759 So.2d 69. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. Id. This is equally applicable to the testimony of a sexual assault victim. Id.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. Id.
*733 The appellate court does not assess credibility or reweigh the evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam , 36,118 (La. App. 2 Cir. 8/30/02), 827 So.2d 508.
Defendant was convicted of violating La. R.S. 14:81.2,[2] which defines molestation of a juvenile as follows:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
The meaning of the phrase "influence by virtue of a position of control or supervision" is not restricted in its application to persons to whom the parent entrusts the child for care, usually for a fee, such as babysitters, child care workers or teachers. State v. Dale , 50,195 (La. App. 2 Cir. 11/18/15), 180 So.3d 528, writ denied , 15-2291 (La. 4/4/16), 190 So.3d 1203. Rather, the statute permits finding evidence of supervision or control by noncustodial parents, relatives, friends and neighbors of young victims. Id.
Viewing the evidence in the light most favorable to the prosecution, the state presented sufficient evidence at trial for a reasonable jury to convict Defendant of the molestation of Y.S. and the molestation of L.A. The testimonies of Y.S. and L.A. alone are sufficient to support these convictions. The jury rendered a unanimous verdict as to each count, thus indicating that the jurors found the victims' testimonies more credible than Defendant's testimony.
Regarding Count One, when the molestation occurred on or about October 9, 2015, Y.S., born July 23, 1999, was 16 years old, and Defendant, born November 3, 1964, was 50 years old, i.e., more than two years older than the victim at the time the offense occurred. Y.S. testified that when she was 15 and 16 years old, Defendant raped her on three separate occasions. Each time, she had called Defendant and asked for a ride home out of necessity when no one else was available or willing to help her. Instead of driving Y.S. home, Defendant took her to another location, including his apartment and a parking lot. Each time, he touched and rubbed her legs and breasts, held her so that she could not move, removed her pants and underwear and forced sexual intercourse on her. Y.S. did not report Defendant's actions until she was "far away" from Shreveport attending YCP in South Louisiana. She explained that she was afraid to tell anyone because Defendant had told her he would kill her if she said anything, and she had seen guns in his truck and apartment. She also noted that after the first time he raped her, he told her not to get him in trouble.
A rational trier of fact could find that Defendant touching and rubbing Y.S.'s *734 legs and breasts and forcing sexual intercourse on Y.S. were lewd and lascivious acts. The evidence presented at trial also demonstrates that Defendant committed the molestation of Y.S. by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm or by the use of influence by virtue of a position of control or supervision over Y.S. By holding her down, removing her clothing and having sexual intercourse with her despite her pleas that he stop, Defendant clearly committed this molestation by the use of force. By offering his phone number and availability to give her a ride, Defendant held himself out as someone she could turn to for help. He then exerted control over Y.S., a teenager in need of a ride home, in order to molest her.
Regarding Count Two, when the molestation occurred on or about January 25, 2011, L.A., born April 19, 1998, was 12 years old, and Defendant was 46 years old, i.e., more than two years older than the victim at the time the offense occurred. L.A. testified that Defendant lured her into a bedroom at his father's house, came up behind her, kissed her neck and touched her body, including her genitals, through the outside of her clothing.
A rational trier of fact could find that Defendant kissing L.A. and touching her genitals were lewd and lascivious acts. The evidence presented at trial also demonstrates that Defendant committed the molestation of L.A. by the use of influence by virtue of a position of control or supervision over L.A. Defendant, an older family member in a position of trust, exerted control over a young family member visiting her uncle when he lured her into a bedroom in order to molest her.
Accordingly, this assignment of error lacks merit.
Other Crimes Evidence
Defendant argues that the trial court erred in allowing evidence of other bad acts and other crimes that was not similar to the charged offenses and had no legitimate purpose. He contends that the prejudicial effect of the evidence outweighed what little probative value it may have had. He argues that the testimonies of A.F., T.F. and J.W. were not relevant because the alleged experiences of these women occurred in different settings and circumstances than those alleged by L.A. and Y.S. He contends that the acts A.F. and T.F. alleged occurred at the family home and do not prove that he had the opportunity, preparation or plan to commit molestation of teenage girls outside of the home 30 years later. He notes that the alleged relationship with J.W. occurred 14 years before the alleged molestations of Y.S. and L.A. He argues that the trial court erred in denying his motion in limine to exclude this evidence.
The state argues that it presented notice that this evidence would be introduced at trial. It notes that neither the minutes nor the record shows that Defendant filed a motion in limine to exclude the La. C.E. art. 412.2 evidence or made any contemporaneous objection to its admissibility at trial. Therefore, it contends that this assignment of error is not properly before this court for review and should be denied. Alternatively, it argues that the argument is without merit because these prior sexual acts by Defendant were relevant to showing his lustful disposition toward children.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841.
La. C.E. art. 404(B)(1) provides that evidence of other crimes, wrongs or acts is generally not admissible. La. C.E. art. 412.2 creates an exception to this rule *735 and governs the admission of evidence of similar crimes, wrongs or acts in sex offense cases. State v. Johnson , 50,005 (La. App. 2 Cir. 8/12/15), 175 So.3d 442, writ denied , 15-1687 (La. 9/16/16), 206 So.3d 203. La. C.E. art. 412.2 states:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.
The balancing test set forth in La. C.E. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
Thus, other crimes, wrongs or acts involving sexually assaultive behavior or which indicate a lustful disposition toward children may be admissible under La. C.E. art. 412.2 if their probative value substantially outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay or waste of time. State v. Johnson , supra. A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. Id.
As noted by the state, Defendant did not preserve this matter for review on appeal. He did not make any pretrial objections, file any motions to exclude this evidence or raise any contemporaneous objections at trial. Although Defendant argues that he filed a motion in limine to exclude this evidence, his assertion is mistaken. The motion in limine filed by Defendant on November 16, 2015, sought to prohibit improper opening statements.
Nevertheless, this claim is without merit. Pursuant to La. C.E. art. 412.2, the testimonies of A.F., T.F. and J.W. were properly introduced into evidence in order to indicate Defendant's lustful disposition toward children. Defendant's half-sisters A.F. and T.F. testified that when they were 11 and 15 years old, respectively, Defendant, who was approximately 19 years old, touched their genitals as they slept in their bedroom. These actions are similar to his molestation of L.A., a 12-year-old cousin whose genitals he touched while in a bedroom of a family home. J.W. testified that when she was 14 years old, she and Defendant, who was 35 years old, spent time together at his house watching television and having sexual intercourse. Defendant's interactions with J.W. are similar to those with Y.S. In both cases, he sought out teenage girls, more than 20 years his junior, to engage in sexual intercourse.
This evidence did not unfairly prejudice Defendant, confuse the issues or mislead the jury. The trial court clearly instructed the jury of the limited purpose for which these other acts could be considered. It did *736 not abuse its discretion in allowing this evidence to be admitted at trial.
Accordingly, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the convictions and sentences of Defendant Steven D. Robinson.
AFFIRMED.

To protect the privacy of the victims, the victims and their family members will be referred to by their initials, pursuant to La. R.S. 46:1844(W).

La. R.S. 14:81.2 was amended by 2011 La. Acts 67, § 1, effective August 15, 2011. Accordingly, as to Count Two, which was alleged to have occurred in January 2011, Defendant was charged with the version of the statute in effect at the time the crime was committed. The definition of molestation of a juvenile was not amended.