NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 KA 0843

STATE OF LOUISIANA

VERSUS

CHRISTOPHER PAUL GLENN

*Judgment Rendered:*   **MAR** 0 8 2022

* * * * * * * *

Appealed from the
21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Case No. 37429

The Honorable Brenda Bedsole Ricks, Judge Presiding

* * * * * * * *

Prentice L. White
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Christopher Paul Glenn

Scott M. Perrilloux
District Attorney
Zachary Daniels
Assistant District Attorney
Livingston, Louisiana

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

**THERIOT, J.**

The defendant, Christopher Paul Glenn, was charged by grand jury indictment with molestation of a juvenile thirteen years of age or older but less than seventeen years of age, by virtue of a position of control or supervision, a violation of La. R.S. 14:81.2(B)(2). He pled not guilty. After a trial by jury, the defendant was found guilty of the responsive offense of attempted molestation of a juvenile, a violation of La. R.S. 14:81.2 and La. R.S. 14:27. The trial court denied the defendant's motion for post-verdict judgment of acquittal, motion in arrest of judgment, and motion for new trial. The trial court sentenced the defendant to ten years imprisonment at hard labor. The trial court denied the defendant's motion to reconsider sentence. The defendant now appeals, urging that the trial court erred in accepting the verdict without sufficient evidence in support thereof and in excluding evidence of the victim's purported prior false allegation of sexual misconduct. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

On the evening of June 3, 2017, around six or seven o'clock, the defendant went to the Zachary residence of his thirteen-year-old cousin, A.M.[1] (the victim), picked her up, and brought her to his residence in Walker, Louisiana. Until around midnight or one o'clock in the morning, the defendant and the victim stayed in the garage, where they listened to music. The defendant gave the victim vodka, and they played "beer pong."[2] The defendant then asked the victim if she wanted to go swimming in his pool, and she agreed.[3]

---

[1] The victim's date of birth is October 28, 2003. She was thirteen years old at the time of the offense and sixteen years old at the time of the trial. Herein, we will refer to the child victim and family members by initials only. See La. R.S. 46:1844(W).

[2] The victim testified that while she was in the defendant's garage, she prepared some of her own vodka drinks while the defendant prepared the others. The victim also testified that the defendant gave her a cigarette when they got in the pool.

[3] Though she did not consume any alcohol, the defendant's wife testified she periodically went into the garage while the defendant and the victim were in there. However, the defendant and the victim swam alone. The victim testified that she wore a bathing suit while they swam.

According to the victim's trial testimony, while they were in the pool, the defendant told her, "Have sex with me." The victim testified that she responded, "No." The defendant then told the victim that her mother and his wife would never find out. The victim again responded negatively, and the defendant grabbed her waist. When asked what happened next, A.M. testified, "He just got the tip in." When asked what tip she was referencing and the area of her body that it came into contact with, she added, "His penis" and "my vagina." She denied any other act occurred, such as being kissed or fondled by the defendant.

During the above described act, Jamie Glenn, the defendant's wife, saw the victim and the defendant through her bedroom window before going outside and confronting them. Mrs. Glenn asked the victim if she wanted to report the incident to the police, and the victim indicated that she wished to do so. Mrs. Glenn drove to North Park in Livingston Parish, pulled over, and called the Livingston Parish Sheriff's Department.

Detective Kyle Hotard and Detective Shawn Lang responded to the call, drove to North Park, took verbal and written statements from A.M. and Mrs. Glenn, and went to the Glenn residence to speak to the defendant. After being advised of his **Miranda**[4] rights, the defendant admitted to picking the victim up from her home in Zachary, bringing her to his residence, and serving her alcoholic beverages. He further admitted that he and the victim were in the pool together, within close proximity, but he denied kissing, fondling, or participating in any other type of sexual activity with the victim. After the questioning, the defendant was placed under arrest.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number one, the defendant argues that the State failed to present evidence to prove the victim was under his supervision and control at the

---

[4] **Miranda v. Arizona**, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

time of the incident. Thus, he contends that without such evidence, the trial court committed reversible error in accepting the jury's guilty verdict. The defendant contends that although A.M.'s mother, J.M., was aware that A.M. was going to his house, she did not specifically entrust him to care for, monitor, support, or act in a parental capacity over A.M. while at his home. The defendant cites **State v. Graham**, 2014-1801 (La. 10/14/15), 180 So.3d 271 (per curiam), to argue that although he is older than the victim, his age is not proof of control or supervision. Thus, the defendant argues that this court should vacate the guilty verdict and enter a judgment of acquittal in his favor.

The State argues it presented sufficient evidence to prove the victim was under the defendant's supervision. Along with the defendant being older than the victim, the State notes the defendant had a "decently close relationship" with the victim's father, was welcomed into their home on multiple occasions, and had previously been given authority over the victim to take her to activities. The State also notes that on the day of the offense, the defendant was alone when he picked up the victim and transported her across parish lines. The State cites La. R.S. 14:93.10, in noting the defendant gave the victim permission to consume alcohol and cigarettes, a level of authority statutorily reserved for "a parent, spouse, or legal guardian."

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The **Jackson** standard of review, incorporated in Louisiana Code of Criminal Procedure article 821(B), is an objective standard for testing the overall

4

evidence, both direct and circumstantial, for reasonable doubt. **State v. St. Cyre**, 2019-0034 (La. App. 1st Cir. 12/19/19), 292 So.3d 88, 113, writ denied, 2020-00142 (La. 5/26/20), 296 So.3d 1063.

When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder, in order to convict, must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. **State v. Bedwell**, 2018-0135 (La. App. 1st Cir. 6/21/18), 2018 WL 3080356, at *14, writ denied, 2018-1247 (La. 1/18/19), 262 So.3d 288.

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, *or by the use of influence by virtue of a position of control or supervision over the juvenile.* Lack of knowledge of the juvenile's age is not a defense.[5] La. R.S. 14:81.2(A)(1). [Emphasis added]. The Louisiana Supreme Court has defined lewd and lascivious conduct very broadly as any conduct that is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to sexual impurity or incontinence carried on in a wanton manner." **State v. Jones**, 2010–0762 (La. 9/7/11), 74 So.3d 197, 204.

---

[5] The defendant's date of birth is July 16, 1984. As noted, on appeal the defendant only contests the sufficiency of the evidence to support one element of the offense, specifically, "the use of influence by virtue of a position of control or supervision over the juvenile."

Under La. R.S. 14:27(A), a person is guilty of an attempt to commit an offense when he has a specific intent to commit a crime and "does or omits an act for the purpose of and tending directly toward the accomplishing of his object." Thus, to support a conviction for attempted molestation of a juvenile, the State was required to prove that the defendant specifically intended to engage in an act described above with A.M. and that the defendant committed an act for the purpose of accomplishing said object. As specific intent to accomplish the offense is the *sine qua non* of the criminal offense of attempt, such proof is indispensable. Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. **State v. Marrero**, 2011-1285 (La. App. 1st Cir. 2/10/12), 92 So.3d 21, 26, writ denied, 2012-0563 (La. 6/15/12), 90 So.3d 1060.

It is well settled that, if found to be credible, the testimony of the victim of a sex offense alone is sufficient to establish the elements of the offense, even where the State does not introduce medical, scientific, or physical evidence or prove the commission of the offense by the defendant. **State v. Lilly**, 2012-0008 (La. App. 1st Cir. 9/21/12), 111 So.3d 45, 62, writ denied, 2012-2277 (La. 5/31/13), 118 So.3d 386. Likewise, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. **State v. Higgins**, 2003-1980, (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Further, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Accordingly, on appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. **Lilly**, 111 So.3d at 61.

Herein, at trial, the victim's mother, J.M., confirmed that the defendant is A.M.'s second cousin on her father's side. J.M. noted that the defendant had a "pretty decent" relationship with their family. She specifically indicated that the defendant came to visit them "every once in a while." The defendant would spend time with A.M. and her sister and take them to do things. When specifically asked if the defendant ever took the victim to her rodeo and barrel racing events whenever J.M. or the victim's father was unavailable, J.M. responded, "maybe one or two times." She denied ever allowing A.M. to consume alcohol. According to J.M, A.M. was not sexually active prior to the incident on June 3, 2017.

The victim testified that she knew the difference between the truth and a lie and admitted that she had been caught lying before in her life. She stated that her father would whip her when she was caught lying. After reviewing her written statement, the victim recalled the defendant threatening to kill her and her family if she did not have sex with him and confirmed that she took the threat seriously. A.M. testified that she and the defendant were close cousins, that she went to his house "[a] lot," and that he came to her house from time to time. A.M. testified that she could not recall whether she texted the defendant or he texted her before the visit in question but agreed that she could have texted him and asked him to come pick her up. She confirmed that she brought her bathing suit with her when the defendant came to pick her up.

A.M. testified that the defendant, his wife, and their children, whom she confirmed were younger than her and probably asleep during the incident, were present at the residence. She stated that the incident in question was the first time that she ever drank outside of the presence of her mother. When asked how much she drank that night, she stated, "I think like a half a bottle of vodka." According to the victim, when the tip of the defendant's penis was inserted in her vagina, the defendant was squatting against the liner of the above ground pool. She tried to

7

push herself away, as the defendant pulled her on top of him and pushed her bathing suit bottoms to the side. She noted the act lasted approximately three seconds and that they had previously been in the pool for about thirty minutes to an hour. The victim confirmed that the incident at issue was the first time she had sexual intercourse.

Mrs. Glenn testified that she and the defendant had been married for about a year prior to the incident, and she was pregnant at the time of the incident. She confirmed that the defendant and the victim "set up drinks" of alcohol. She testified that she would periodically join them in the garage initially and was in there for about an hour before she went to her bedroom to try to go to sleep. However, she had trouble falling asleep because the defendant and A.M. were too loud. Mrs. Glenn noted that they had cameras around the house, and after she saw the defendant "touching on [A.M.'s] butt," she decided to watch them closer. At that point, the defendant and the victim were still in the garage.

As Mrs. Glenn further testified, about twenty minutes later, the defendant and the victim went out to the backyard to the pool. Once the defendant and A.M. moved to the pool, Mrs. Glenn began to watch them from her bedroom window before going outside to observe them from behind a waist-high fence. She testified that after initially getting in the pool, the defendant got out, turned off the "back light," and once he got back in the pool, A.M. got on his lap, and from what Mrs. Glenn could tell, "was going up and down and they were kissing on each other." When asked how she was able to see in the dark, Mrs. Glenn testified, "You could just see from their shadows." Mrs. Glenn told them they were caught, and at that point, both of them jumped out of the pool. She told A.M. that she was going to take her home. Once they got in the car, she asked A.M. what happened, and A.M. told her that the defendant "forced her to do stuff." Mrs. Glenn asked A.M. if she

8

wanted to report it to the police, and A.M. responded positively. They pulled over at a park, North Park, and called the police.

Detective Lang described the victim as "shaken" and "shocked" when he arrived at the park, but "very coherent" and able to speak clearly. Consistent with the victim's testimony, Detective Lang further testified that the victim stated that while in the pool, the defendant slid her underwear to the side and that the tip of his penis was inside of her vagina. Detective Lang confirmed that he could tell the victim had been drinking alcohol, but he did not conduct a field sobriety test, so he could not ascertain her level of intoxication. He confirmed that she said her statement was one hundred percent true and correct.

In **Graham**, relied upon by the defendant, the defendant therein was charged with aggravated incest. The victim was thought to be the defendant's step-sibling. However, during the trial, it became apparent that the defendant and the victim were not step-siblings at the time of the alleged offense because their parents were not yet married. The trial court permitted the State to add molestation of a juvenile as a responsive verdict and the jury convicted the defendant of that offense. **Graham**, 180 So.3d at 273. On review, the Louisiana Supreme Court found that molestation of a juvenile was not a responsive verdict to incest and further found that there was no evidence that the defendant ever exercised supervision or control over the victim. **Graham**, 180 So.3d at 275-76. The **Graham** court noted that the jurisprudence has never accepted status alone as proof of control or supervision. As the Court specifically stated, "Instead, consistent with the language of Revised Statute 14:81.2 which requires not just the potential for influence but its *use*, Louisiana courts have required *proof of specific acts* constituting an exertion of control or supervision." **Graham**, 180 So.3d at 276-77.

The **Graham** court cited **State v. Forbes**, 97-1839 (La. App. 1st Cir. 6/29/98), 716 So.2d 424, 426, wherein the defendant was a visitor in the home of

9

the victim's grandmother. He was convicted of attempted molestation of a juvenile with control or supervision of the juvenile. However, there was no showing that the defendant ever exercised any control or supervision over the juvenile. As this court noted, at the trial in that case, the victim stated that at her grandmother's house, her grandmother was the boss. When she was asked if the defendant had baby-sat for her or could tell her what to do, she replied "No" to both questions. The victim's grandmother testified that she took care of the victim when she visited and that the defendant did not take care of the victim or have control or supervision. There was no other specific testimony on the element of control or supervision. On appeal, this court modified the conviction to attempted indecent behavior with a juvenile. **Forbes**, 716 So.2d at 428.

In this case, unlike **Graham** and **Forbes**, the record contains evidence of specific acts of supervision and control exercised by the defendant over A.M. Not only had the defendant, according to the victim's mother, previously supervised and cared for the victim prior to the offense, the defendant did so on the night in question as well. Specifically, the defendant was allowed to pick the victim up and drive her to his residence. Further, he was alone with the victim most of the night, as he served her alcoholic beverages. Moreover, it was not irrational for the jury to find that the defendant used force and psychological intimidation to commit lewd or lascivious acts upon A.M. with the intent of arousing or gratifying his sexual desires. Specifically, the victim testified that the defendant threatened her family and grabbed her waist as she tried to pull away, and she further told Mrs. Glenn that the defendant forced her to do things. See **State v. Robinson**, 51,830 (La. App. 2d Cir. 2/28/18), 246 So.3d 725, 733-34, writ denied, 2018-0573 (La. 2/11/19), 263 So.3d 897 (in which the molestation victim called the defendant for rides, and he would take her to other locations to commit the molestation).

10

An appellate court is constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. **State v. Hano**, 2005-2090 (La. App. 1st Cir. 6/9/06), 938 So.2d 181, 187, writ denied, 2006-1713 (La. 1/26/07), 948 So.2d 164.

Herein, the jury heard the testimony of all the witnesses, including the victim's trial testimony. In reviewing the evidence presented at trial, we cannot say that the jury's determination was irrational under the facts and circumstances presented. **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. See **State v. Mire**, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam).

After a thorough review of the record, we are convinced that a rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted molestation of a juvenile. Thus, we find no merit in assignment of error number one.

## EVIDENCE OF A PRIOR FALSE SEXUAL ABUSE ALLEGATION

In a combined argument for assignments of error numbers two and three, the defendant argues the trial court erred in not allowing him to present evidence of a prior false allegation of sexual misconduct, purportedly made by the victim. The defendant specifically argues that the trial court's refusal to permit him to question State witnesses about the victim's prior false sexual misconduct allegation greatly hampered his defense. He further contends the trial court committed reversible error in sustaining the State's hearsay objection, as defense counsel attempted to investigate the basis of the victim's false allegation for impeachment purposes. He concludes the trial court denied the jury the right to make its own credibility determinations regarding the purported prior false allegation, undermined the fairness of the proceeding, and violated his right to a fair and impartial trial.

The State contends defense counsel failed to lay a sufficient foundation or establish the personal knowledge of any witness called to testify regarding a prior allegation of sexual misconduct. The State notes the victim denied making or recanting any such allegation. The State concludes the trial court properly limited testimony before the jury based on the failure to lay a foundation establishing relevance, personal knowledge, or a proper hearsay-within-hearsay exception.

In a prosecution for sexually assaultive behavior, La. C.E. art. 412 prohibits the introduction of evidence of the victim's past sexual behavior, with certain limited exceptions. "Past sexual behavior" is defined as sexual behavior other than the sexual behavior with respect to which the offense of sexually assaultive behavior is alleged. La. C.E. art. 412(F). However, the Louisiana Supreme Court has held that a defendant may present evidence that a victim made prior false allegations regarding sexual activity for impeachment purposes pursuant to La. C.E. art. 607(C). See **State v. Smith**, 98-2045 (La. 9/8/99), 743 So. 2d 199, 201-03. In **Smith**, the Supreme Court concluded that when a defendant seeks to

12

introduce evidence that the victim made prior false allegations of molestation, the issue is one of credibility, and Article 412 is inapplicable. **Smith**, 743 So.2d at 202-03. The **Smith** court stated:

> When a defendant seeks to introduce evidence that the victim has made such prior false accusations, the trial judge must evaluate that evidence by determining whether reasonable jurors could find, based on the evidence presented by defendant, that the victim had made prior false accusations and whether all other requirements of the Code of Evidence have been satisfied.

**Smith**, 743 So.2d at 203-04. Thus, two requirements must be satisfied before evidence of prior false accusations of sexual misconduct can be considered as impeachment evidence. First, the activity must be of a sexual nature. Second, there must be evidence that the statement is false. **State v. Richard**, 2001-1112 (La. App. 1st Cir. 2/15/02), 812 So.2d 737, 739, writ denied, 2002-1264 (La. 11/22/02), 829 So.2d 1038. Assuming this initial burden is met, all other standards for the admissibility of evidence apply. **Smith**, 743 So.2d at 203.

Constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. **State v. Governor**, 331 So.2d 443, 449 (La. 1976). "Relevant evidence" is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La. C.E. art. 401. The trial judge, in deciding the issue of relevancy, must determine whether the evidence bears a rational connection to the fact at issue in the case. **State v. Williams**, 341 So.2d 370, 374 (La. 1976). Except as limited by the Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible. La. C.E. art. 402. Although relevant, evidence may nonetheless be excluded if the probative value is substantially outweighed by its prejudicial effect. See La. C.E. art. 403. A trial court is vested with much discretion in determining whether the probative value of

relevant evidence is substantially outweighed by its prejudicial effect. **State v. Brand**, 2016-0960 (La. App. 1st Cir. 12/22/16), 2016 WL 7407414, at *4, <u>writs denied</u>, 2017-0167, 2017-0131 (La. 9/15/17), 225 So.3d 478, 479.

Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802. A trial court's ruling regarding the relevancy and admissibility of evidence will not be disturbed on appeal absent a clear abuse of the trial court's discretion. **State v. Easley**, 432 So.2d 910, 912 (La. App. 1st Cir. 1983).

Herein, at trial, defense counsel sought to elicit testimony to show that the victim made a prior false allegation against an acquaintance, J.M. The defense counsel initially questioned the victim's mother in this regard. She testified that she knew J.M., but she denied A.M. ever accused him of a sex crime. During cross examination of the victim, the defense counsel again pursued this line of questioning. Specifically, A.M. confirmed that she knew J.M., as she used to be on the same drill team as his daughter. The State then objected on the grounds of relevance. The trial court sustained the State's objection but allowed the defendant to proffer testimony from A.M., outside of the presence of the jury.

During the proffered questioning of A.M., she denied that J.M. ever touched her inappropriately and again denied ever making such an accusation against J.M. A.M. further denied ever accusing anyone else of touching her inappropriately other than the defendant. While the victim recalled attending one or more out of town rodeos in the past, she specifically denied making any claims against J.M. while at an out-of-town rodeo.

The defense subsequently re-called Mrs. Glenn and asked her if she had any knowledge of A.M. making false allegations against J.M. The State objected on the

grounds of relevance. The trial court then allowed the defense counsel to proffer testimony, outside of the presence of the jury. During the proffered testimony, Mrs. Glenn stated that she was told about A.M. accusing another man during Mother's Day weekend of 2017. However, Mrs. Glenn did not provide any facts regarding the substance of the accusation. When asked if A.M. accused J.M. of having sex with her, she replied, "That I don't know." She testified that she was later told that A.M. said she lied about the undescribed accusation. Upon the State's inquiry, Mrs. Glenn denied that she was in a position to know if the purported allegation was false. She testified that Michelle Montelero, the defendant's cousin, was the source of her knowledge regarding a claim by A.M. that was recanted.

The trial court sustained the State's objection, ruling that the best evidence would be testimony by Mrs. Glenn's source, Michelle Montelero. Subsequently, the trial court allowed the defense to call Montelero as a witness by Zoom Video Communications. When asked if she had personal knowledge of A.M. making an accusation against J.M. during Mother's Day weekend of 2017, Montelero responded, "Yes." She added, "I was there that weekend that she accused him of it." Again, the defense did not elicit testimony regarding the substance or nature of the allegation. When asked if she later learned that A.M. said the accusation was not true, Montelero responded, "Yes." However, she further stated, "I didn't personally hear it come out of her mouth." At that point, the State objected on grounds of hearsay.

The trial court sustained the State's objection and allowed the defense counsel to proffer additional testimony outside of the presence of the jury. During the proffered testimony, Montelero confirmed that she did not see or observe anything regarding any accusation and denied being present at any time during any questioning of the victim in that regard. When asked if the victim ever said

anything to her about an accusation against J.M. or about lying about an accusation, she testified, "No, she never breathed a word to me about it."

In **Smith**, the victim admitted that she made prior accusations of improper sexual behavior and two witnesses corroborated that fact. At least one independent witness testified that the victim recanted those accusations. **Smith**, 743 So.2d at 200-01, 203. In the instant case, the victim denied making any other accusation. The victim's mother was specifically asked if the victim ever made any allegation against J.M. and she testified that the victim had not done so. The other witnesses questioned by the defense in this regard, Mrs. Glenn and Montelero, never heard the victim make any allegation or state that she lied about an allegation, and moreover, were not specifically questioned as to the substance of any accusation that may have been told to them by someone other than the victim. Thus, unlike in **Smith**, the defendant herein offered no direct evidence that A.M. ever made, retracted, recanted or lied about any prior allegation of sexual abuse. We find that the proffered testimony did not meet the **Smith** test for admissibility.[6]

We agree with the trial court in that any probative value of the evidence was greatly outweighed by its potential prejudicial effect. See La. C.E. art. 403. Based on our review of the proffered testimony presented at trial, we find that reasonable jurors could not have concluded that A.M. made any prior false accusation of sexual misconduct. Thus, we find no merit in assignments of error numbers two and three.

**CONVICTION AND SENTENCE AFFIRMED.**

---

[6] As detailed above, we note that defense counsel, despite the State's many objections and the trial court's ultimate ruling, was able to successfully introduce to the jury the possibility of a false allegation by the victim against another individual. Thus, the defendant was not completely precluded from attacking A.M.'s credibility.